27695. FRANKLIN v. THE STATE.

JORDAN, Justice. Franklin appeals his conviction and sentence to life imprisonment for the murder of his former spouse. The only issues for consideration are (1) whether the trial judge erred in allowing the district

attorney to pose a hypothetical question to a character witness on cross-examination, and (2) the sufficiency of the evidence to support the conviction. *Held:*

1. Counsel for the defendant objected to the question posed by the district attorney because it was "a highly prejudicial question." This objection is *too* general. See Green, Georgia Law of Evidence, § 12, pp. 32, 35, and numerous cases there cited. But even if it be assumed that there was a proper objection there is no contention in the brief that the merit in the question was not adjusted to the evidence. The defendant, a former policeman, was accused of strangling his former wife, and the state had adduced evidence that death occurred from strangling; that the accused was seen with his former wife in the area where the body was found; and that he fled to another state. The witness, a fellow policeman, testified on direct examination concerning the accused's good character. The district attorney on cross-examination was allowed to pose the following over objection: "Officer, I ask you again— What do you think of the character of a man who is a policeman, who strangles his wife to death and ditches her body out in a field and leaves town? Is that character good or bad?" to which the witness replied, "Well, if that happens it's bad." Moreover, it is proper on cross-examination to allow the district attorney to question a character witness regarding particular matters for the purpose of testing the extent and foundation of his knowledge and the correctness of his testimony on direct examination. *May v. State,* 185 Ga. 335, 339 (195 SE 196).

2. The evidence for the state shows that the victim and the accused were divorced on Friday, December 19, 1969. The next day the accused appeared at her home for the stated purpose of taking the victim shopping for Christmas presents for their children, and she voluntarily accompanied him. She was never seen alive

again after this unless she was alive when two witnesses saw her with the accused on Monday, December 22, in his automobile. When seen on Monday her head was leaning against one of the doors in the automobile, and the accused was crouched down. Her body was discovered in a nearby field the next day, dressed in the same clothing as when she left home with the accused, under circumstances indicative of death by strangulation at least 24 hours earlier, at a place other than the place of discovery. When the accused visited a friend in the area on Monday, December 22, he asked to hide when a laundryman, the deceased's brother, came to the house, explaining that he owed for laundry but was not going to pay because his shirts had been ripped. This was refuted by a representative of the laundry, who testified the accused always paid on delivery and had never complained of damage. When the accused came by again the next morning his friend observed a spot of blood on his shirt, and called the spot to his attention. He explained he needed to change shirts, left immediately, and never came back. Later, while in jail, he attempted through an intermediary to refresh the recollection of this witness to the effect that what she related occurred on December 15 instead of December 22. In conflict with the evidence for the state the accused testified he last saw the victim on Saturday, December 20, when after an argument, he let her out of his automobile near an exit to Interstate 20, she having expressed an intention to catch a bus. Through the testimony of members of his family he purported to establish an alibi by showing that he was thereafter in Atlanta and Alpharetta until he left the state by bus on December 22, leaving behind his automobile and the woman he had intended to marry on December 20, explaining he had an argument with her and their engagement was broken after he informed her that he

was going shopping with his former wife. One of the alibi witnesses testified, however, that he and his ex-fiancee spent the night on Sunday, December 21, at the home of this witness in Atlanta. Another alibi witness testified that his ex-fiancee was with him when he visited her in Alpharetta the next day. There is also evidence tending to impeach the witness who observed the spot of blood on the accused's shirt, by showing her entanglements with the law.

Who and what to believe were properly matters for resolution by the jury, and the jury was authorized under the evidence to convict the accused of murder.

3. The trial judge did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*

ARGUED FEBRUARY 13, 1973 — DECIDED MARCH 15, 1973.

*David Crosland,* for appellant.

*John T. Strauss, District Attorney, Arthur K. Bolton, Attorney General,Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Assistant Attorney General, David J. Bailey,* for appellee.