### 30098. BETHAY et al. v. THE STATE.

HILL, Justice.

Appellants Bethay and Austin were found guilty by a jury and sentenced to 12 years imprisonment for armed robbery. Co-defendant Hall was found guilty of robbery at the same trial and appealed to the Court of Appeals. See *Hall v. State,* 135 Ga. App. 690 (1975).

The main issue on this appeal is whether the trial court erred in overruling the defense motion for a directed verdict of acquittal at the close of the state's case. The defendants also contend that the court erred in allowing allegedly improper cross examination of a character witness and of co-defendant Hall, and in restricting the voir dire examination of jurors.

The jury was authorized to find the following facts: Two employees present at the time of the robbery of Sea Faring Sam's, a seafood establishment in Valdosta, testified that minutes after 8 p.m. on October 11, 1974, two black males, one tall (about 6 feet and weighing approximately 210 pounds) and one short (about 5 feet 8 inches and weighing approximately 150 pounds), with stockings over their heads, robbed the establishment of approximately $535 in cash from the cash register (including rolled coins) and approximately $150 from an employee. The shorter man, wearing light pants (either

beige or off-white), carried a sawed-off shotgun and the taller one, with an afro haircut, had a .38 caliber nickel-plated pistol.

One of these employees identified one of the three defendants on trial as having been the shorter of the two men who entered the establishment. The transcript shows that it was defendant Bethay identified by this witness.

A co-owner of the seafood place arrived just as the two masked men ran out and drove off in a darkish automobile parked in a back lot.

Joe George was on his way to work shortly after 8 p.m. He drove past Sea Faring Sam's, saw two black men running toward a parked car which he described as a light goldish or brown General Motors car, either a Sky Lark or a GTO, with a slanted back. He attempted to get the tag number, but failed to see it initially. He testified that as the car passed him, he saw and memorized the tag number and immediately reported it to Sea Faring Sam's when he arrived at work a mile away. He testified that there were three black males in the car and that the tag number was M G S (at trial he could not remember the sequence) 246 (concerning which his memory was certain).

A police officer investigating the robbery testified that the tag number reported to him, GMS 246, was traced by computer to an address at 928 South Oak Street. Arriving there at about 8:15 p.m. he found the three defendants at the Bethay home and a gold Sky Lark with a light top, its motor warm, parked in the driveway. The tag number was GMS 246.

Detective Norton was notified of the robbery at 8:10 p.m. and arrived at the Bethay home between 8:25 and 8:30. Bethay consented in writing to a search of his home and automobile. Rolls of quarters, dimes, nickels and pennies and $468 in bills ($140 in twenties, $220 in tens, $90 in fives and $18 in ones), for a total of $487, were found stuffed between the mattresses in the bedroom. A search of the auto disclosed a red plastic stocking bag, a gray shirt, and a maroon sock. One hundred forty nine dollars was found on Jessie Hall and $98 on Daniel Austin. No guns were ever discovered. The Buick Sky Lark, GMS 246, was registered in the name of Annie Lois Bethay (defendant Bethay's wife) at 928 South Oak Street.

At the close of the state's case, a motion made for directed verdict of acquittal on behalf of defendant Hall was joined by defendants Bethay and Austin. The motions were overruled and the trial proceeded.

A neighbor of the Bethays testified that Bethay and two others arrived at the Bethay home in an unhurried manner about 10 minutes after the beginning of "Sanford and Son," an 8:00 television show, and that the police arrived "right behind them." Another neighbor testified that Bethay had arrived home at about 7:50 just before the start of the television program and that the police came about 15 or 20 minutes later.

Bethay's mother testified that she had withdrawn $300 from First National and had given it to her son in tens and twenties the week before to pay a debt in Florida. Bethay explained the rolls of coins as gambling money.

All of the defendants testified at trial that they had seen each other at around 6 p.m. at a bar. Bethay then left and took his wife to church at 7:30. Austin and Hall drove Austin's car to his father's house. After an unsuccessful attempt to restart the car, Hall and Austin testified that they left the house on foot and walked some distance before hitching a ride with Bethay shortly before 8 o'clock. They testified that they drove to Bethay's house to get some clothing for a party, arriving there at 8, and that the police arrived about 20 to 25 minutes afterwards. Bethay testified that he was wearing gold pants on the night in question.

On rebuttal for the state, a bank official at the First National Bank testified from bank records that Bethay's mother had withdrawn only $162 in almost a year.

1. The defendants assert that it was error for the trial court to overrule the defense motion for directed verdict of acquittal made at the close of the evidence for the state. As the above statement of facts shows, after that motion was overruled the defense put in evidence.

It has now been clearly ruled that since the enactment of Ga. L. 1971, p. 460, Code Ann. § 27-1802, providing for directed verdicts in criminal cases, it constitutes reversible error for the trial court to refuse to direct a verdict of acquittal where there is absolutely no conflict in the evidence and the verdict of acquittal is

demanded as a matter of law. *Merino v. State,* 230 Ga. 604, 605 (198 SE2d 311) (1973). In that case, it was decided that the overruling of a motion for directed verdict of acquittal henceforth would be reviewable on appeal.

In the case before us it becomes necessary to determine what evidence will be considered upon appellate review of the overruling of a motion for acquittal made at the close of the state's case, where the defense puts in evidence. Upon such review, is the appellate court to consider only the evidence put in by the state during its case in chief and prior to the motion, or is the appellate court to consider also the evidence put in by the defense (e.g., testimony elicited by the prosecutor on cross examination of defense witnesses)? The law (Ga. L. 1971, p. 460; Code Ann. § 27-1802), provides no answer to this inquiry.

To assist in this determination, let us assume a hypothetical case: Two defendants are on trial for aggravated assault. The victim testifies and identifies only one of his assailants. Other evidence shows that the two defendants were together before and after the affray. Thus, the evidence put in by the state during its case in chief is solid against one of the defendants but, due to lack of positive identification, is close on the question as to whether a verdict of acquittal is demanded as a matter of law as to the other defendant. His motion for directed verdict of acquittal is overruled and the trial proceeds. The defendant whose conviction is virtually assured takes the witness stand, claims self-defense, and identifies the co-defendant as the other participant. The jury finds both defendants guilty. On appeal from the overruling of the one defendant's motion for directed verdict of acquittal, should the appellate court consider the testimony of the other defendant positively identifying the movant as having participated in the crime? Clearly, justice requires that a person found guilty after trial by jury should not be freed because the appellate court is prohibited from considering the entirety of the evidence. Thus, the rule in criminal cases shall be in accord with the rule in civil cases. *Young v. Wiggins,* 229 Ga. 392 (1) (191 SE2d 863) (1972).

We therefore hold that on appeal of the overruling of

a motion for directed verdict of acquittal made at the close of the state's case in chief, the reviewing court can consider all the evidence in the case in determining whether the trial court erred in overruling the motion. Having made this decision as to the scope of the evidence to be considered on review, we must next decide upon the test by which such evidence is to be measured.

Code § 26-507 enacted as part of the Criminal Code of 1968 provides that "(a) A prosecution is barred if the accused was formerly prosecuted for the same crime . . . if such former prosecution (1) resulted in . . . a conviction . . ." except "(d) A prosecution is not barred . . . (2) if subsequent proceedings resulted in the invalidation, setting aside, reversing, or vacating of the conviction, unless the accused was thereby adjudged not guilty or unless there was a finding that the evidence did not authorize the verdict."

Thus, under this Code section, where a person is prosecuted and convicted, a subsequent prosecution is barred if subsequent proceedings (e. g., motion for new trial on the general grounds, or appeal) resulted in a finding that the evidence did not authorize the verdict.

Therefore, where a conviction is reversed upon a finding that the evidence did not authorize the verdict, a subsequent prosecution is barred; i.e., where a new trial is granted because the evidence did not authorize the verdict, the new trial is barred.[1] This must have been the intent of the legislature, because that is what the Code section clearly says. That is to say, unless the evidence at the first trial is sufficient to authorize the verdict of guilty, a second prosecution is barred.

Because, on appeal and under Code § 26-507, supra, the result of finding that the evidence did not authorize the verdict is the same as a directed verdict of acquittal (no retrial in either event), in reviewing the overruling of a motion for directed verdict of acquittal we will utilize

---

[1]Where the trial court grants a new trial on the ground that the verdict is against the weight of the evidence, a subsequent prosecution would not be barred by Code § 26-507.

the standard used in reviewing the overruling of a motion for new trial on the ground that the verdict is contrary to the evidence; i.e., the "any evidence" test. *Cunningham v. State,* 235 Ga. 126 (1975). Contrary statements in *Willingham v. State,* 131 Ga. App. 851 (2) (207 SE2d 249) (1974), although perhaps correct, are disapproved in view of present Code § 26-507.

Having determined that all the evidence adduced upon the trial should be considered, and having determined that the verdict of guilty should be affirmed if there is any evidence to support it, we affirm the action of the trial court in overruling the motions for directed verdict of acquittal.

Defendant Bethay was identified by a witness to the armed robbery. Bethay and two others left the scene in Mrs. Bethay's car, which was traced to Bethay's house. The evidence showed that defendant Austin was with Bethay before and immediately after the robbery, and that they arrived at Bethay's house after the robbery (8:10 p.m. according to one defense witness). A sum of money approximating the amount stolen was found in the house. The evidence supports the verdict. *Merino v. State, Cunningham v. State, Hall v. State* (2), supra.

2. No objection was made at trial to the district attorney's cross examination of the character witness. Moreover, such cross examination as to the witness' knowledge of the character of the accused was proper. *Franklin v. State,* 230 Ga. 291, 292 (196 SE2d 845) (1973).

3. The cross examination of co-defendant Jessie Hall by the district attorney as to his prior oral statement to police officers was properly allowed for purposes of impeachment of defendant Hall. The time, place, person and circumstances were called to the witness' attention with sufficient certainty to satisfy the requirements of Code Ann. § 38-1803. See *Klug v. State,* 77 Ga. 734 (2a) (1886).

4. Defense counsel was prevented from asking prospective jurors the following question on voir dire: "Does everyone in this panel understand that you would be enforcing the law just as vigorously by voting not guilty, in the event the State fails to prove its case beyond a reasonable doubt, than you would voting guilty under

these charges?"

This question was objected to and the objection was properly sustained. Code Ann. § 59-705, dealing with examination of jurors, is generally considered as permitting a broad range of questions in examination of prospective jurors. We should keep the Code section in mind however, as opposed to the generalization. For example, that section permits inquiry not as to every matter and every thing, but as to "any matter or thing which would illustrate any interest of the juror *in the cause. . ."* (Emphasis supplied.)

The Code section does not require the trial court to permit the use of abstract legal questions. *Gough v. State,* 232 Ga. 178, 181 (205 SE2d 844) (1974); *McNeal v. State,* 228 Ga. 633 (3) (187 SE2d 271) (1972); *Hall v. State,* supra, and cases cited therein. Those legal questions required in capital cases where the death penalty may be imposed by the jury are required by Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), as opposed to being allowed by Code Ann. § 59-705.

The trial court did not err in refusing to permit the question to be put to the jurors.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs specially in Divisions 1 and 4.*

SUBMITTED JUNE 20, 1975 — DECIDED OCTOBER 21, 1975.

*Edwards, Edwards & Edwards, H. B. Edwards, Jr., H. B. Edwards, III,* for appellants.

*H. Lamar Cole, District Attorney, Robert B. Royce, Assistant District Attorney,* for appellee.

HALL, Justice, concurring specially in Divisions 1 and 4.

1. I adhere to the views expressed in my dissenting opinion in *Marchman v. State,* 234 Ga. 40, 41-45 (215 SE2d 467) (1975) on the proper construction of Code Ann. § 26-507 dealing with former jeopardy. However, because I have failed to to convince a majority of this court, *Marchman* is now a precedent which must be followed until changed by this court or the General Assembly.

2. The provisions of Code Ann. § 59-705 do not confer upon counsel for the parties any absolute right as to the manner of conducting voir dire by counsel for the parties. On the contrary, this "control . . . is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review." *Whitlock v. State,* 230 Ga. 700 (5) (198 SE2d 865) (1973). "In regulating and controlling the business of the court, wide discretion is necessarily placed in the judge, and the appellate courts should never interfere with the exercise of that discretion unless it is made to appear that wrong or oppression has resulted from its abuse." *Kellar v. State,* 226 Ga. 432 (4) (175 SE2d 654) (1970).

In my opinion, there has been no showing of manifest abuse of the trial court's inherent power to control the voir dire proceeding.