Bowles, Justice.
Michael Washington, hereinafter appellant, appeals from his conviction in the Chatham County Superior Court of armed robbery, kidnapping, and murder. He was sentenced to life imprisonment on the murder charge and 15 years on each of the armed robbery and kidnapping charges.[1]
The circumstances leading up to the arrest of appellant are as follows. On April 15,1976, an automobile with North Carolina license plates was recovered in Savannah, Georgia by the police. The vehicle was found to belong to Heustus Wilson Beck, later identified as the victim of the crime. The recovery of the automobile led to the arrest of Michael Shavers (a co-defendant of appellant) on May 4, 1976. Shavers led the police to an area commonly known as Rossignol Hill and directed the officers to the remains of a decomposed human body. The officers recovered several items at the site including a human skull, a pair of eyeglasses, and an upper denture plate. Shavers made a statement to the police but this statement was not admitted in evidence against appellant at his trial. Based on information received from Shavers, appellant was arrested for murder that same night of May 4,1976. Appellant was advised of his constitutional rights after which he gave a statement describing the commission of the crime. Appellant’s statement was introduced into evidence at his trial. A 9mm pistol, identified as belonging to the victim was recovered from co-defendant Shavers.
Based on the evidence adduced at trial, the jury could find the following facts. On April 9, 1976, appellant, Shavers, and a man called "Red,” were walking through town when one of them suggested that they get some money. Someone said they should "go to the Ramada Inn and get us a man.” They there found the victim, kidnapped him in his car, and started driving towards *330 Rossignol Hill. On the way the victim was forced to lie on the floor of the car while appellant robbed him of his money. At Rossignol Hill, Red suggested that they shoot the victim while a train was passing to drown the noise. Shavers and appellant both fired at the victim as he attempted to run away. Shavers followed the victim into the bushes and fired the fatal shot. The three men then divided the stolen money and went their separate ways.
Appellant was indicted for murder, kidnapping, and armed robbery and the jury found him guilty on all three indictments. He cites six enumerations of error in his appeal to this court. We find no error and affirm all three convictions.
1. Appellant first asserts that the trial court erred in overruling his motion to dismiss for lack of speedy trial. Appellant was arrested on May 4, 1976, and was incarcerated until his trial on April 24, 1978, over 23 months later.
In Barker v. Wingo, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused’s constitutional right to a speedy trial had been violated. These factors are: (a) The length of the delay, (b) the reason for the delay, (c) the defendant’s assertion of his right, and (d) the prejudice to the defendant. 407 U. S. at 530. The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant. We must apply these factors to the facts of the case at bar to determine if appellant’s right to a speedy trial has been abridged. Treadwell v. State, 233 Ga. 468 (211 SE2d 760) (1975).
(a) Length of delay —23 months and 10 days is a very long time to be in jail awaiting trial. This is especially true where, as here, the appellant was not serving time for any other offense. It should be noted, however, that during this period of time, appellant was also being held for trial on another murder charge.
*331 (b) Reason for delay —At the hearing on appellant’s motion to dismiss, the district attorney testified that the case had been set down for trial a couple of times but that it had been continued. The first continuance occurred because a prosecution witness, a California dentist, was unavailable. The second continuance was because appellant’s attorney was unavailable even though the prosecution witness had come from California. The district attorney testified that nothing was ever done by his office to purposefully delay the trial and that even after the demand for trial was withdrawn, he discussed setting the case down for trial with appellant’s attorney. The district attorney testified that appellant’s attorney stated at that time that he may not continue to represent the appellant. When in January or February of 1978, the district attorney told appellant’s attorney the case was going to have to be tried, the attorney withdrew as he had not been paid. Appellant’s present attorney was appointed in February of 1978 and the trial was held in April.
(c) Defendants assertion of his right — Appellant was represented by counsel throughout the entire period of his incarceration. His first attorney was retained by him shortly after his arrest and remained his attorney until his present appointed attorney took over the case in February, 1978. Appellant’s first attorney filed a demand for trial in February, 1977 and a trial date was set. The case was removed from the trial calendar and the demand for trial was withdrawn in May, 1977. No subsequent demand for trial was made. Appellant’s present attorney never made a demand for trial but, rather, in April, 1978, filed a motion to, dismiss for lack of speedy trial.
(d) Prejudice to the defendant — In this area, the Supreme Court in Barker v. Wingo, supra, identified three interests which the speedy trial right was designed to protect, the last being the most important: (a) to prevent oppressive pre-trial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired.
It is practically undisputable that 23 months and 10 days of pre-trial incarceration, standing alone, is *332 oppressive. Here, appellant was not serving time for any other offense but was simply awaiting trial in this and one other case.[2] As for minimizing anxiety and concern, there was some evidence in the record that appellant attempted suicide while in jail.
Appellant’s primary assertion of prejudice had to do with the impairment of his defense. At the motion hearing he testified that he had lost track of three of his character witnesses and an alibi witness. An examination of the record of appellant’s testimony at his hearing shows this allegation of prejudice to be meritless. Two of his character witnesses whom he had lost track of were his mother and his sister. The third was an individual whose last name appellant could not remember and who had died shortly after appellant was arrested. Appellant, who was nineteen when he was arrested, had lived in Savannah until he was eighteen years old and yet the only character witnesses he could come up with were ones who were unavailable. The record indicates that appellant’s first attorney was, in fact, in contact with appellant’s family until the time he withdrew as counsel. Even if he were not, it is difficult to believe that appellant would have wanted the testimony of a mother and sister who did not even keep in touch with him. Furthermore, since the third character witness died shortly after appellant’s arrest, it did not matter when the trial was held as far as his testimony was concerned.
Appellant also asserted that he lost track of an alibi witness, one Tommy Brown, who was allegedly in Atlanta with him on the night of the murder. As stated above, appellant was represented by retained counsel all during this time. There was no testimony that counsel was urged to try and find this witness and keep track of him. Counsel testified that at one point appellant gave him a list of witnesses and he went off to interview them but nothing more on this appears in the record. Thus, appellant has not shown that his defense was impaired by the delay in his trial.
*333 Weighing all of these factors and considering all the facts involved, we find that this appellant has not been denied his right to a speedy trial. The evidence indicates that appellant’s first counsel was instrumental in the case being delayed. We need not decide if the withdrawal of a demand for trial which is not refiled constitutes a waiver of the right to a speedy trial though it well might. There has been no allegation of ineffective assistance of counsel with regard to appellant’s first counsel. We can well assume that the decision not to file a demand ftir trial and to encourage the delay of the casé was a matter of trial tactics engaged in for the benefit of appellant. We cannot hold that such tactics constitute a denial of his right to a speedy trial. See Barker v. Wingo, supra, wherein it appeared that Barker did not want a speedy trial.
2. In his second enumeration of error, the appellant contends that the trial court erred in allowing into evidence a statement made by him which incriminated him. He urges that the statement was not freely and voluntarily given but was given under duress, force and threat.
At the Jackson-Denno hearing (Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964)), a state witness testified that the appellant had been given his Miranda rights and that he was in no way coerced into giving the statement. The trial court judge heard the testimony of the appellant alleging he had been beaten into making a statement and heard the testimony of the officers denying such conduct. The judge was in a position to observe the witnesses as they testified and evaluate the credibility of each. He concluded after considering all the facts, that the appellant’s statement was voluntary and, therefore, admissible into evidence. We must accept this factual determination unless that finding is shown to be clearly erroneous. Pierce v. State, 235 Ga. 237 (219 SE2d 158) (1975). In view of the fact that the appellant’s account of how he was forced to make his statement varied each time he told it and the fact that although the appellant spent almost two years in jail awaiting trial, he never during that time attempted to repudiate his statement, the trial court’s finding cannot be said to be *334 clearly erroneous.
3. Appellant next alleges that the trial court erred in allowing into evidence the following items: a pair of eyeglasses, a set of upper dentures, a 9mm pistol, and a sales receipt for a 9mm pistol. He contends that a proper foundation had not been laid, that the items were not properly connected to the case, and that their introduction was prejudicial to him. We shall examine each item separately to determine its admissibility.
(a) Eyeglasses — The eyeglasses were identified by a state witness as having been recovered at the scene of the crime. The victim’s brother testified that they looked like some the victim wore. The law does not require absolute certainty with respect to such identifications. Therefore, the eyeglasses were relevant evidence tending to prove the identity of the victim and it was for the jury to determine its weight and effect. West v. State, 232 Ga. 861 (209 SE2d 195) (1974). See also, Moore v. Illinois, 408 U. S. 786 (92 SC 2562, 33 LE2d 706) (1972).
(b) Dentures — The dentures were also identified by a state witness as having been found at the scene of the crime — that is, the area to which the appellant admitted taking "the man from North Carolina” and the area where the victim’s remains were found. The dentures were also identified by the doctor who made them for the victim and thus they were relevant as tending to show the victim’s identity.
(c) 9mm pistol — The pistol was identified by a state witness as having been found in the possession of a co-defendant. The victim’s brother identified it as the victim’s gun or "one like it.” The brother had a sales receipt which he found in the victim’s effects showing the purchase of a 9mm pistol with the same serial number as this 9mm pistol. The appellant in his statement admitted shooting at the victim with "a Magnum” and although a police detective testified that a 9mm pistol was not technically "a Magnum,” he said that such pistols were commonly called "Magnums” in street parlance. Thus, the pistol was relevant evidence as a possible weapon used in the crime, and, again, it was for the jury to determine its weight and effect. West v. State, supra. Moore v. Illinois, supra.
*335 (d) Sales receipt for a 9mm pistol — Appellant contends that the sales receipt was not an original document and, therefore, should have been excluded as in violation of the best evidence rule. Nothing in the testimony indicates that the receipt was not the victim’s original receipt and the document itself was not included in the record on appeal. Since the burden of proving alleged error is on the appellant and he has failed to illustrate that error has been committed, we must affirm the trial court’s ruling that the receipt was admissible in evidence for whatever weight and effect the jury might ascribe to it. The receipt was relevant in that it tended to establish the pistol as the victim’s and thus connected to the crime.
It is apparent from the foregoing that all of the items in question were properly connected to the case and that a proper foundation was laid for the admission of each.
4. In appellant’s fourth enumeration of error, he argues that his motion for directed verdict on the charge of kidnapping should have been granted as the state had failed to prove the victim was taken and held against his will.
In his voluntary statement, appellant spoke of going to the Ramada Inn to "get a man.” He told of the trip to the scene of the murder with the victim lying on the floor of the car while appellant robbed him. It is inconceivable that the victim was not being taken and held against his will at that time.
A directed verdict of acquittal is not proper unless there is no conflict in the evidence and the verdict of acquittal is demanded as a matter of law. Merino v. State, 230 Ga. 604 (198 SE2d 311) (1973). A verdict of guilty should be affirmed if there is any evidence to support it. Bethay v. State, 235 Ga. 371 (219 SE2d 743) (1975). The statement by the appellant and the corroborating evidence are sufficient to meet the "any evidence” test.
5. In his fifth enumeration of error, appellant urges that the trial court erred in overruling his motion for directed verdict on the charge of murder. He complains that the state failed to prove the corpus delicti by failing to establish the identity of the victim.
*336 In his statement to the police, appellant identified the victim as "the man from North Carolina.” Mr. L. P. Beck, the brother of the victim, testified that he had not seen his brother since March, 1976. The victim’s automobile was found in the Savannah area. Dentures found with the decomposed remains at the scene of the crime were positively identified as the victim’s by the dentist who made them. Eyeglasses found with the remains were identified as being like some the victim wore. The victim’s pistol was found in the possession of a co-defendant whom appellant implicated in the crime in his statement.
Appellant’s assertion that the identity of the victim had not been established is meritless.
6. In his final enumeration of error, appellant contends that the offense of armed robbery was merged with the offense of murder and, therefore, it was error to overrule his motion for new trial on the armed robbery charge. He asserts that since he did not fire the fatal shot but a co-defendant did, proof of the armed robbery was essential to support his conviction of murder. Therefore, he argues, the crimes should have been merged under Burke v. State, 234 Ga. 512 (216 SE2d 812) (1975) and Thomas v. State, 240 Ga. 393 (242 SE2d 1) (1977).
Thomas was a case of felony murder and, therefore, merger of the armed robbery into the offense of murder was appropriate. In Burke, the defendant, who was not the perpetrator of the killing, was convicted of malice murder as well as armed robbery. In vacating the armed robbery conviction, this court held: "His conviction of malice murder is supported because he was a conspirator in the armed robbery and the murder was a probable consequence of that armed robbery. The malice and intent of the actual slayer is imputed to the defendant because of his participation in the armed robbery as a conspirator. Therefore, proof of the armed robbery is essential to support his conviction of malice murder and is an included offense.” 234 Ga. at 515.
In the case at bar, the malice of the actual slayer was not imputed to appellant because of his participation in the armed robbery. In fact the two crimes were committed at different times and places. A finding of malice on the *337 part of appellant himself was sufficiently justified by his own statement that he shot repeatedly at the victim before his co-defendant finished killing him. Therefore, there was no error in refusing to hold that the armed robbery was merged into the murder.
Argued January 15, 1979
Decided February 27, 1979
Rehearing denied March 27, 1979.
Ashman & Zipperer, Ralph L. Lorberhaum, for appellant.
Arthur K. Bolton, Attorney General, Russell N. Sewell, Jr., Assistant Attorney General, Andrew J. Ryan, III, District Attorney, Robert M. Hitch, III, Assistant District Attorney, for appellee.

Judgment affirmed.

All the Justices concur.

The 15-year sentences run concurrently with each other but consecutively to the life sentence.

Appellant received a directed verdict of acquittal for the other offenses which were tried in March, 1978.