### 46215. MOODY v. THE STATE.
(375 SE2d 30)

MARSHALL, Chief Justice.

Joseph Lee Moody appeals his conviction of armed robbery. Evidence was adduced at the trial to the following effect. Sometime

around 8:00 a.m., the victim, a 15-year-old girl, allowed Moody to enter the apartment where she resided, purportedly to use the telephone. After using the telephone, Moody asked the victim whether her mother was at home, then suddenly threw the victim to the floor and forced her to walk down the hallway to her mother's bedroom. As they walked down the hallway, Moody said, "Wait, let me get my gun," then stuck something in her back which she believed to be a gun. She never saw a gun, but she felt something against her back. When they arrived at the mother's bedroom, Moody demanded money and jewelry. The victim pointed out to Moody a jewelry box belonging to her mother. It was locked and the victim did not have the key to it. Moody told the victim that "if there's not jewelry in here, I'm coming back." Moody tied the victim up, took the jewelry box into another room and broke it open, then left the apartment. The victim later freed herself and called the police. When the police arrived, the jewelry box and jewelry were missing, and they were never recovered. The victim positively identified Moody as her assailant. A neighbor had seen him on the steps of the apartment complex earlier on the morning of the armed robbery.

We affirm.

1. A person commits the offense of armed robbery when with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon, *or any replica, article, or device having the appearance of such weapon. . . .* [Emphasis supplied.]

OCGA § 16-8-41 (a).

In response to the jury's query as to whether saying "I have a gun" and pushing an unidentified object into the victim's back, come under the definition of "the appearance of such weapon" under the armed-robbery statute, the trial judge instructed the jury that "appearance means any concept that is obtained through the use of any of the senses . . . ." Moody argues that the evidence did not authorize his conviction of armed robbery because (1) "appearance" means "capable of being seen visually" and (2) "OCGA § 16-8-41, as defined by the court, is impermissibly vague and said statute is therefore unconstitutional because it fails to put citizens on notice as to what conduct is prohibited by law, in violation of the rights created under the Constitution of the United States and the Constitution of Georgia."

[T]he 1968 revision of the armed[-]robbery statute deleted from the former law all reference to 'any replica, article or device having the appearance of such weapon.' The effect of

> [Court of Appeals cases construing the amended statute] was to exclude from consideration under [that statute] *the reasonable apprehension of the victim concerning the true nature of the weapon-like object being pointed at him or her.* See *Watts* [*v. State*, 142 Ga. App. 857 (4) (237 SE2d 231) (1977)], supra, at 858. . . . We note that the General Assembly has amended [the armed-robbery statute] effective April 9, 1981, so as to reinstate the 'toy pistol' aspect of the former law. Ga. L. 1981, p. 1266. Hence, armed robbery now can be committed either with a real weapon or with a toy or replica weapon having the appearance of being real. [Emphasis supplied.]

*Adsitt v. State*, 248 Ga. 237, 240 (6) (282 SE2d 305) (1981).

The key words above are "reasonable apprehension." What a victim can reasonably apprehend necessarily must depend upon the circumstances of each case. Although "appearance" may be defined as the appellant contends, i.e., capability of being seen visually, it is also defined as "suggest[ing] a dissembling or pretense," and "appear" has as one definition, "to be taken as: LOOK, SEEM." Webster's unabridged Third New International Dictionary. Since the purpose of using "any replica, article, or device having the appearance of [an offensive] weapon" is to create a reasonable apprehension on the part of the victim that an offensive weapon is being used, it is immaterial whether such apprehension is created by use of the sense of vision or by any other sense, provided that the apprehension is reasonable under the circumstances. We have upheld the constitutionality of the armed-robbery statute without the "appearance" provision. *Coker v. State*, 234 Ga. 555, 558 (2) (216 SE2d 782) (1975). We now hold that the statute as presently amended is constitutional. The trial judge did not err in defining "appearance." (Cf. *Adsitt v. State*, 248 Ga. 237, supra at 240, which held that the trial court did not err in taking from the jury the issue of whether the instrument used in an aggravated assault was a "deadly weapon.")

Accordingly, the trial judge did not err in his instruction to the jury as to the definition of "appearance," these instructions did not invade the province of the jury, and the evidence authorized the finding that Moody so used "a replica, article, or device having the appearance of [an offensive] weapon," regardless of what it was, as to create a reasonable apprehension on the part of the victim that it was an offensive weapon.

2. There is no merit to Moody's contention that the evidence did not authorize the conviction for the reason that there was no evidence as to the contents of the jewelry box. Even assuming that the con-

tents were not proven, the conviction would be authorized by proof of the theft of the jewelry box itself, as, under the statute, "the offense of armed robbery is committed merely by the armed taking of the 'property of another,' regardless of whether its value is great or small." *Bell v. State*, 227 Ga. 800, 801 (183 SE2d 357) (1971).

3. Moody contends that his conviction must be reversed because the state used five of its ten peremptory strikes to strike blacks, thereby allegedly using its peremptory strikes in a racially discriminatory manner in violation of the mandate of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The supplemental transcript of the jury selection reveals that, of 42 jury panel members, nine, or 21%, were black, and that the state struck five of the black jurors and five of the white jurors. On the panel of 12 jurors actually selected to try the case, there were four, or 33%, black jurors. Under the facts of the case, the trial judge did not err in holding that the appellant had not made a prima facie case of discrimination. *Aldridge v. State*, 258 Ga. 75 (4) (365 SE2d 111) (1988).

4. Prior to trial, the defendant's counsel requested and was furnished a list of witnesses the state expected to call, pursuant to OCGA § 17-7-110. When the state called as a witness the victim's mother, Josephine Dedmon, the defense objected that her name was not on the list. However, the state showed that, although the witness' name had been Josephine Dedmon at the time of the crime, her previous name had been Josephine Floyd (the same last name as the victim's). (Her name appeared on the list as "Ms. [or Mrs.] Floyd.") The trial judge ruled that, since the defense had been furnished with the correct address and telephone number of the witness, and since defense counsel had gone to that address, but had not contacted anyone there, the objection to the witness' testifying was overruled. At the conclusion of the witness' testimony, defense counsel moved to strike the testimony, which motion was denied. He argues here that a new trial is required.

"[T]he transcending purpose of this Code section is to insure that an accused is not confronted at trial with testimony against him from witnesses whom he has not had the opportunity to interview prior to trial." *Hicks v. State*, 232 Ga. 393, 399 (207 SE2d 30) (1974). The record here shows that the witness was identified sufficiently for counsel to have had an opportunity to interview her prior to trial. Furthermore, "remedies available for defendant are a continuance or a mistrial," *Haynes v. State*, 245 Ga. 817, 820 (268 SE2d 325) (1980) and cit., neither of which was sought here. The trial judge did not abuse his discretion in permitting the witness to testify and in allowing her testimony to remain in the record.

5. We find that the evidence here is sufficient to meet the requirements of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61

LE2d 560) (1979).
*Judgment affirmed. All the Justices concur.*

Decided January 6, 1989 —
Reconsideration denied February 1, 1989.

*W. Douglas Adams*, for appellant.
*Glenn Thomas, Jr., District Attorney, John B. Johnson III, Assistant District Attorney*, for appellee.