## A02A2230. HILL v. THE STATE.
(574 SE2d 394)

ANDREWS, Presiding Judge.

James Anthony Hill appeals from the denial of his motion for new trial following his conviction by a jury, along with co-defendant Scott Davis, of robbery, burglary, and simple battery against Chester Leonard Davis, Sr., the father of Scott Davis.

1. Hill's fifth enumeration of error, that the trial court erred in denying his motion for directed verdict, challenges the issue of the legal sufficiency of the evidence. OCGA § 17-9-1; *Bright v. State*, 238 Ga. App. 876, 877 (1) (520 SE2d 48) (1999). Viewed with all inferences in favor of the jury's verdict, *Wilson v. State*, 233 Ga. App. 327, 328 (1) (503 SE2d 924) (1998), the evidence was that on December 18, 2000, Leonard Davis, Sr. was 73 years old and lived alone in the family home place. He suffered from lung problems, was on oxygen 24 hours a day, and was basically homebound. Scott Davis was the youngest of his nine children and had lived with Davis, Sr. in early 2000. Although his home did not have regular telephone service, one of Davis, Sr.'s daughters had given him a cell phone for emergencies and Davis, Jr., one of his sons, stopped by every morning and evening to check on him. Davis, Sr., who received Social Security and disability payments, did not believe in banks and was known to his family and friends to keep a lot of money on his person. Davis, Sr. wore nothing but overalls and kept two wallets, one in his front bib pocket containing his driver's license, small bills, and a single $100 bill. That bill had been given to him by his wife before she left for the hospital in 1967, asking him to keep it for her. She never returned home, and Davis, Sr. kept the $100 bill until he died. In his back pocket, Davis, Sr. kept over $1,000 in cash.

On December 18, Crick was home with the flu. She lived in the same neighborhood as Hill, and he had visited her home before. Siffrin, Scott Davis, and Hill all lived at the same boarding house in the area. Hill did not know Davis, Sr. prior to this incident.

Siffrin got off work that afternoon, and he and Scott Davis were watching television when Davis said he could get some marijuana. Siffrin, in his employer's van, was taking Davis to get marijuana when Davis said he wanted to go by his father's home to rob him.

Davis had repeatedly told Siffrin how easy it would be to rob the older man. Siffrin agreed to go to the door and knock while Davis stood around the corner of the house, which had no porch light. Although Siffrin went to the door and knocked, after seeing Davis, Sr., he turned around and left. Scott Davis was angry at him, but Siffrin told him he "didn't have the heart to do it." Siffrin and Davis then went to Crick's home where they met Hill and Towler. Davis, Hill, and Towler went into the kitchen and returned. Davis then asked Siffrin to take them back to his father's house. Siffrin told Davis he would not do anything, but would give him a ride back.

Siffrin, Davis, Hill, and Towler then left Crick's home in the van and proceeded to Davis, Sr.'s home. On the way, Davis told Hill that his father had no porch light or telephone and all they had to do was to get the door open. Davis, Sr. was an old man, and they could take his two wallets. As they approached the home, Davis and Hill got out of the van. Siffrin then drove around with Towler in the van for about ten minutes, came back, and found Davis and Hill walking down the road with two wallets containing about $1,500 which Davis and Hill then split.[1] The two wallets were thrown out the window of the van. Siffrin and Towler both testified regarding Hill's involvement.

Davis, Sr. told Deputy Guthas that there were two figures at the door, one of whom came from around the house, and he was knocked to the floor and the two wallets were taken. Davis, Sr. told him he had an idea that it was somebody who knew him or was a member of his family because the two went directly for his wallets. Davis, Sr. died five days after the robbery.

The evidence was legally sufficient. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hill's first, third, and fourth enumerations deal with the trial court's denial of his motion in limine and his hearsay objections regarding the testimony of Leonard Davis, Jr., son of the victim and older brother of Scott Davis, repeating statements made by Davis, Sr. regarding the robbery. They are considered together.

At the beginning of the trial, Hill's counsel made an oral motion in limine regarding Davis, Sr.'s three statements. The first was made to Deputy Guthas, and Davis, Sr. said he could not give any identifying information regarding the two assailants because it happened so fast, but he had an idea it was somebody who knew him or was a member of his family or close friend. The other two statements were made to Leonard Davis, Jr., the first on the night of the robbery, and the second within the next two days when Davis, Sr. told Davis, Jr. he "felt like it was Scott [Davis]."

---

[1] Siffrin pled guilty to robbery, burglary, and simple battery as a result of these events. Towler, who cooperated with police, was not charged.

In arguing the motion in limine, Hill's counsel acknowledged that Davis, Sr.'s statement to Deputy Guthas was admissible, and we will not address that statement further. Regarding the others, counsel for Hill acknowledged that hearsay was admissible in a number of ways when the victim was deceased, "two I can think of off the top of my head. But it's got to stop somewhere. It can't just keep extending out. I think one of the concerns about it — and this one, Your Honor, this is a dying declaration, which is different." Thereafter, counsel stated that he could attack the dying declaration by proving general bad character of the deceased or inconsistent statements. As authority, Hill's counsel cited only *Brantley v. State*, 177 Ga. App. 13, 14-16 (2), (3) (338 SE2d 694) (1985), which deals only with the res gestae and dying declaration exceptions to the hearsay rule.

As the trial court explained during the hearing on the motion for new trial, however, the statements of Davis, Sr. to Davis, Jr. were admitted, not under either of these exceptions, but under the necessity exception of OCGA § 24-3-1 (b).

> For a statement to be admitted under OCGA § 24-3-1 (b), there must be particularized guarantees of trustworthiness. *Abraha v. State*, 271 Ga. 309, 313 (2) (518 SE2d 894) (1999). In other words, there must be something present which the law considers a substitute for the oath and cross-examination of the declarant. *White v. State*, 268 Ga. 28, 29 (2) (486 SE2d 338) (1997). . . . However, the circumstances which demonstrate the reliability of hearsay statements will vary depending on the nature of the statement, and therefore, the determination of trustworthiness is "inescapably subjective." *Gissendaner v. State*, 272 Ga. 704, 711 (6) (532 SE2d 677) (2000). Consequently, the trial court's determination will not be disturbed absent an abuse of the court's discretion. Id.

*Thomas v. State*, 274 Ga. 156, 162-163 (8) (549 SE2d 359) (2001). See also *McCulley v. State*, 273 Ga. 40, 42 (2) (537 SE2d 340) (2000).

Pretermitting the lack of specificity of the objection voiced below and the failure to address the necessity exception, see *Franklin v. State*, 184 Ga. App. 396, 397 (2) (361 SE2d 700) (1987), we concur with the trial court's conclusion that the two statements were admissible under the necessity exception. Here, within two days of the incident, Davis, Sr. confided to his son that he believed another son, Scott Davis, was one of the perpetrators. Prior to his death, Davis, Sr. never retracted his statement.

Additionally, even if admission of this statement were error, as to Hill, it was harmless because he was not mentioned in it, he was

not a friend or acquaintance of Davis, Sr., and Siffrin and Towler testified concerning his participation. *Todd v. State*, 274 Ga. 98, 101 (3) (549 SE2d 116) (2001).

3. Hill also contends that Davis, Jr. should not have been allowed to testify because his name was not on the list of witnesses provided by the State pursuant to OCGA § 17-16-21.

Counsel for the State stated that she had faxed a supplemental list to counsel for Davis and Hill the day before trial, but neither counsel had been by their offices in the intervening time. Further, a tape of the interview was contained in the State's file, to which Hill's counsel had access.

> "The transcending purpose of this Code section [(OCGA § 17-16-21)] is to insure that an accused is not confronted at trial with testimony against him from witnesses whom he has not had the opportunity to interview prior to trial. The record here shows that the witness was identified sufficiently for counsel to have had an opportunity to interview (him) prior to trial. Furthermore, remedies available for defendant are a continuance or a mistrial, neither of which was sought here." (Citation and punctuation omitted.) *Moody v. State*, 258 Ga. 818, 821 (4) (375 SE2d 30) (1989). Accordingly, this enumeration of error lacks merit.

*Dill v. State*, 235 Ga. App. 265, 267-268 (3) (508 SE2d 739) (1998). See *Carter v. State*, 253 Ga. App. 795, 797 (1) (560 SE2d 697) (2002); *Mowery v. State*, 234 Ga. App. 801, 802 (2) (507 SE2d 821) (1998).

4. Hill, in his sixth enumeration, argues that the trial court erred in refusing to give his request to charge no. 7 which dealt with a witness testifying pursuant to "a grant of immunity from prosecution or a promise of no prosecution by the state (or who testifies pursuant to a promise of leniency or as the result of a negotiated plea in which leniency may be inferred . . .)."

Although Hill argues that such a charge was appropriate as to Siffrin, Siffrin specifically denied that there was any "deal" regarding his plea to robbery by force and there was no evidence of any promise of leniency by the State in exchange for Siffrin's testimony. Siffrin was merely hoping for something beneficial at the time of his sentencing.

As acknowledged by Hill's counsel when discussing this request to charge, it was applicable only to "[l]eniency offered to Siffrin. I can't say there was any —."

It was not error for the trial court to refuse to give a charge not supported by the evidence. *Wilson v. State*, 274 Ga. 637, 640 (7) (555 SE2d 725) (2001).

5. Hill's seventh enumeration is that the trial court erred in sentencing him separately for simple battery, which he contends merged with the robbery count.

Hill was charged jointly with Davis with robbery of Davis, Sr. "by use of force" and with simple battery by causing "physical harm to Chester Davis[, Sr.], a person over the age of 65."

Simple battery is not, as a matter of law, a lesser included offense of robbery by force. See *Givens v. State*, 184 Ga. App. 498, 500 (3) (361 SE2d 830) (1987). Nor can it be said that, in this case, the two offenses merged as a matter of fact. Here, Hill shoved Davis, Sr. and then he and Davis forcefully removed one wallet and flipped Davis, Sr. over to take the other. The simple battery on a person over the age of 65 occurred before the robbery by force. There was no error. See *Smith v. State*, 250 Ga. App. 465, 466 (1) (552 SE2d 468) (2001); *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

6. Finally, Hill contends that his sentence was harsh and unreasonable.

We note that Hill's 20-year sentence is within the statutory limits for robbery and burglary. This Court will not review for legal error any sentence within the statutory limits, and any question of excessiveness should be addressed by the sentence review panel as provided in OCGA § 17-10-6. *Harden v. State*, 239 Ga. App. 700, 702 (3) (521 SE2d 829) (1999).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED NOVEMBER 12, 2002.

*Wayne L. Burnaine*, for appellant.
*Timothy G. Madison, District Attorney, Brian M. Rickman, Assistant District Attorney*, for appellee.