A02A1446. WHITE v. THE STATE.
(574 SE2d 629)

BARNES, Judge.

Jerry Keith White appeals his convictions for armed robbery, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. He contends on appeal that the trial court erred by denying his *Batson* challenge, erred by denying his motions to suppress evidence of his out-of-court and in-court identifications, and erred by denying his motions for a directed verdict of acquittal on the armed robbery and possession of a firearm charges. Finding no reversible error, we affirm.

1. White contends the trial court erred by denying his motions for a directed verdict on the armed robbery and possession of a firearm during the commission of a felony charges because the evidence did not show that he had a weapon. A motion for a directed verdict of acquittal should be granted only when there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom demands a verdict of acquittal as a matter of law. OCGA § 17-9-1 (a); *Taylor v. State*, 252 Ga. 125, 127 (1) (312 SE2d 311) (1984). On appeal a reviewing court may consider all the evidence in the case, *Bethay v. State*, 235 Ga. 371, 375 (1) (219 SE2d 743) (1975), and must view the evidence in the light most favorable to the verdict. *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

Although White testified that he did not use a firearm during the robbery and only pretended to have a weapon, two employees of the restaurant testified that the robber had something that looked and felt like a gun. The night manager of the store testified that the robber pressed something in her side that could have been the barrel of a gun and told her to open the restaurant's safe or he would blow her brains out. She felt something round, but she did not know whether it was a gun or a metal object. She felt a weapon, but never saw one.

Another witness testified that the robber had something in his hand shaped like a gun. It was an odd shape, and he could not tell whether "it was a real gun or a plastic gun, but it was a gun shaped object." This evidence was sufficient to submit the case to the jury.

> Under OCGA § 16-8-41 (a), a person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon. Under this statute, the presence of a weapon is necessary to a conviction for armed robbery. But the presence of such a weapon may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon itself was neither seen nor accurately described by the victim. Some physical manifestation of a weapon is required, however, or some evidence from which the presence of a weapon may be inferred. Furthermore, "the question is whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon."

(Citations, punctuation and emphasis omitted.) *Prins v. State*, 246 Ga. App. 585, 586 (1) (539 SE2d 236) (2000). The issue is whether the

robber created a "reasonable apprehension on the part of the victim that an offensive weapon is being used," regardless of whether the victim actually saw the weapon. *Moody v. State*, 258 Ga. 818, 820 (1) (375 SE2d 30) (1989). "[I]t is immaterial whether such apprehension is created by use of the sense of vision or by any other sense, provided that the apprehension is reasonable under the circumstances." Id.

Therefore, review of the evidence in the manner most favorable to the verdict reveals ample evidence from which any rational trier of fact could find beyond a reasonable doubt that White was guilty of these offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accordingly, the trial court did not err by denying White's motions.

2. Pretermitting whether the trial court erred by denying White's motions to suppress the evidence of his identifications, we find that any such error was harmless in the circumstances of this case. During his trial, White took the stand and admitted "going in there and taking the cash money," because, he contended, it was an "inside job" arranged with the manager of the fast food restaurant.

Therefore, no question existed about whether White was the person who entered the store and took the money. The only issues were whether this was an inside job and whether White used a firearm. Neither of those issues is implicated in White's motions to suppress the identification evidence. Consequently, assuming the trial court's ruling on White's motions to suppress the identification evidence was error, we find any error harmless beyond a reasonable doubt in view of the overwhelming evidence of White's guilt, including his admission that he entered the fast food restaurant and took the money. *McGee v. State*, 209 Ga. App. 261, 262 (1) (433 SE2d 374) (1993), disapproved on other grounds, *Jones v. State*, 272 Ga. 900, 903 (2), nn. 13, 14 (537 SE2d 80) (2000).

3. White contends the trial court erred by denying his *Batson* challenge to the State's use of a peremptory strike to remove an African-American juror. In *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." (Citation and punctuation omitted.) *Evans v. State*, 183 Ga. App. 436, 439 (3) (359 SE2d 174) (1987).

Because the prosecutor offered race-neutral reasons for the peremptory challenges and the trial court ruled on the ultimate question of intentional discrimination, we need address only the sufficiency of the prosecutor's explanation for the peremptory strikes. *Chunn v. State*, 210 Ga. App. 209, 210 (2) (435 SE2d 728) (1993). See *Smiley v. State*, 263 Ga. 716, n. 2 (438 SE2d 75) (1994).

Two African-Americans were potential jurors: one male and one female. The African-American male was not challenged and served on the jury. The State, however, challenged the female African-American, and White "raised a question as to this juror being stricken by the State." The trial court responded, "She has been stricken by the State and she is African-American. The defendant is African-American. The question of *Batson* has been raised."

The prosecutor responded that his "reason for striking [the juror] is employment related." He did not strike her because she was black. He struck her because he thought that people in artistic or cosmetic professions have a different slant. White's response was that she was the only African-American female on the panel and her answers to questions "didn't give any characteristics any different to any others."

Finding no *Batson* violation, the trial court denied White's challenge. On appeal, White argues that the trial court's ruling was clearly erroneous because White carried his burden of proving that the race-neutral reason given by the State was pretextual as the State did not strike similarly situated white female jurors, one who was a part-time chorus instructor and the other a studio operator.

The United States Supreme Court has established a three-step test for evaluating challenges to peremptory strikes.

> "Once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U. S. 765[, 767] (115 SC 1769, [1770-1771,] 131 LE2d 834, 839) (1995).

*McKenzie v. State*, 227 Ga. App. 778 (1) (490 SE2d 522) (1997). Further,

> [a] neutral explanation means an explanation based on something other than the race of the juror. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race neutral. In step 3, the court must evaluate the persuasiveness of the justification for exercising the strike and determine whether the opponent of the strike carried his burden of proving purposeful discrimination. The opponent of the strike may carry his burden of persuasion by showing that similarly situated jurors of another race were not struck. The trial court's deci-

sion on a *Batson* motion rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous. The factors that make up a trial court's credibility determination under *Batson* will often go beyond the mere words that accompany the record before the appellate courts.

(Citations, punctuation and footnotes omitted.) *Morris v. State*, 246 Ga. App. 260, 262 (540 SE2d 244) (2000).

Here, the State's reason for this strike was that the prosecutor believed that people in the artistic and cosmetic professions have a different slant. On its face, this is a race-neutral explanation. When the proponent of the strike offers a purported race-neutral explanation, there is no requirement "to enunciate 'an explanation that is persuasive, or even plausible.'" *Jackson v. State*, 265 Ga. 897, 898 (2) (463 SE2d 699) (1995). A neutral explanation is one based on something other than the race of the juror, and, if discriminatory intent is not inherent in the explanation, the reason offered will be deemed race-neutral. Id. At the final stage of a *Batson* inquiry, "'[t]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from[,] the opponent of the strike.'" Id. at 899.

In this case, neither of the two jurors White relies upon was similarly situated with the juror challenged, who was a full-time dance instructor. One was a part-time chorus instructor who primarily was a carpet salesperson and the other was a homemaker who had operated a studio of some kind at some point in the past. Given the differences between these jurors and the person challenged, we cannot say that the trial court's ruling was clearly erroneous.

*Judgment affirmed. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED NOVEMBER 22, 2002.

*Novy, James & Vaughan, Eugene Novy, Deborah M. Vaughan,* for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.