## 37750. ADSITT v. THE STATE.

JORDAN, Chief Justice.

State and federal due process challenges to a subsection of our criminal venue statute, specifically, to Code Ann. § 26-302 (h), bring to this court Adsitt's appeal from his convictions for possession of cocaine and aggravated assault upon a law enforcement officer.

A combined force of officers from the Albany Metro Drug Squad and the Worth and Irwin County Sheriffs' Departments went to Adsitt's home to arrest him on a warrant issued in Worth County. Adsitt was not home. While driving away from Adsitt's home, the officers saw Adsitt driving toward his home and blocked the road with one of their vehicles. Adsitt was observed by the officers throwing out of his automobile a package containing a substance which later was identified as cocaine. Agent Stephens approached Adsitt's blocked automobile while displaying his GBI badge on his belt and while yelling to Adsitt that he was a GBI agent. Adsitt pointed a twelve gauge pump shotgun at Agent Stephens' chest. Agent Stephens wrestled the weapon from Adsitt's hands and completed the arrest. The shotgun subsequently was found to be unloaded.

The arrest was consummated on a road locally referred to by some persons as "County Line Road" at a point approximately seven-tenths of a mile north of highway thirty-two. The Irwin County Sheriff and the Irwin County District Attorney's Investigator testified that in their opinions the point where Adsitt was arrested was in Irwin County, whereas the Coffee County and Irwin County surveyors testified that in their opinions the point of arrest was about 1000 feet inside of Coffee County.

Investigator Lanny Dean testified that he was a resident of Irwin County, had been an Irwin County Deputy Sheriff for nine years before joining the District Attorney's staff, that he had been in law enforcement for about thirteen years, and that his knowledge about the location of the Irwin-Coffee County Line was derived from his experience as an Irwin County Deputy Sheriff and from the former and present sheriffs of Irwin County. Sheriff Pope testified that he had lived for fifty-six years in an area of Irwin County lying a short distance from "County Line Road", that the roadway always to his knowledge had been the line between the two counties, and that Coffee County officers always had answered police calls to locations on the east side of the road whereas Irwin County officers always had answered calls to locations on the west side of the road. Sheriff Pope also testified that he understood that the two counties split the costs of bridges and sewers on the road.

Rhett Royal, who had been the Irwin County Surveyor for approximately nine years, was called by the defense and testified that in his opinion the Irwin-Coffee County Line lay approximately 1000 feet west of the road at the point of Adsitt's arrest, thereby placing the entire road at that point within Coffee County. He admitted that the road was referred to as the "Coffee-Irwin Public Road" in a lot of old deeds.

Carlton Evans, the Coffee County Surveyor, testified that he had "run" the county line himself, and that in his opinion the point of arrest lay approximately 1000 feet within Coffee County.

Additional facts will be stated as necessary for consideration of the enumerations of error.

1. Adsitt objected to the opinion evidence of Investigator Lanny Dean, placing the point of arrest within Irwin County, on the ground that present-day, as distinguished from ancient, reputation about the location of the county line is not admissible. *Moore v. McAfee,* 151 Ga. 270 (6) (106 SE 274) (1920); Code Ann. § 38-313. No similar objection was interposed to Sheriff Pope's opinion that the point of arrest lay within Irwin County.

Investigator Dean testified that he learned the location of the county line from the present and former sheriffs of Irwin County. Sheriff Pope testified that he had lived nearby for fifty-six years, and that to his knowledge the road always had been the county boundary. Investigator Dean's opinion therefore was not based upon present-day reputation. Rather, it was based upon long-standing, community reputation. *Green v. State,* 123 Ga. App. 286 (3) (180 SE 2d 564) (1971). The seventh enumeration of error, argued by Adsitt first, is without merit.

2. Adsitt next contends that the evidence relating to proof of venue is insufficient to sustain the convictions. When the evidence as to venue is conflicting, the State must prove venue as a jurisdictional fact beyond a reasonable doubt. See *Johns v. State,* 239 Ga. 681, 682 (1) (238 SE2d 372) (1977); *Green v. State,* supra. However, it is not the law that the jury was obligated to accept the opinion evidence of the surveyors and to reject the opinion evidence of the law enforcement officers relating to the location of the county line. *Boyd v. State,* 207 Ga. 567 (1) (63 SE2d 394) (1961); *Rouse v. State,* 135 Ga. 227 (1) (69 SE 180) (1910); *Ford Motor Co. v. Hanley,* 128 Ga. App. 311, 315 (2) (196 SE2d 454) (1973). The evidence as to venue was sufficient to sustain the convictions. The first and second enumerations of error are without merit.

3. Adsitt argues that Code Ann. § 26-302 (b), establishing venue when the crime is committed on or immediately adjacent to the boundary line between two counties, and Code Ann. § 26-302 (h), establishing venue when the crime is committed in more than one county, should not have been given in the court's charge to the jury because the evidence proved that the point of his arrest lay 1000 yards within Coffee County. The jury was not obligated to accept the defense's evidence that the arrest situs lay within Coffee County. Division 2, supra. The trial court did not err by charging the two sections. The third and fifth enumerations of error are without merit.

4. We adhere to the opinion expressed in *Bundren v. State,* 247 Ga. 180 (1) (274 SE2d 455) (1981), that Code Ann. § 26-302 (b), establishing venue when the crime is committed on or immediately adjacent to the boundary line between two counties, is not in violation of the constitutional mandate that criminal trials be held in the county in which the crime was committed. Art. VII, Sec. XIV, Par. VI, Constitution of Georgia (Code Ann. § 2-4306). The fourth enumeration of error lacks merit.

5. We hold that Code Ann. § 26-302 (h) is not unconstitutionally vague or indefinite so as to violate state and federal concepts of due process. Rather, that it adequately provides a mechanism to carry into effect the mandate of our state's constitution that criminal trials be held in the county in which the crime was committed. *Bundren v. State,* supra. The sixth enumeration of error is without merit.

6. The remaining enumerations of error individually and collectively raise the issue of whether or not an unloaded shotgun which is intentionally pointed at another in a threatening manner, rather than being used as a bludgeon or club, can be a "deadly weapon" within the meaning of the aggravated assault statute. Code Ann. § 26-1302. Adsitt contends that the reasonable apprehensions of the victim are irrelevant; that the fact the weapon was unloaded proves he had no intention to kill or to injure Agent Stephens.

We agree with and adopt the reasoning of Judge Smith (now Justice Smith) in *Watts v. State,* 142 Ga. App. 857 (4) (237 SE2d 231) (1977). We hold that if it reasonably appears to the assault victim that the firearm is or might be loaded then the assailant should be held to the consequences of using a deadly weapon whether or not the weapon in fact is loaded. A shotgun used in the manner established by the evidence in *Watts* or in the present case is a "deadly weapon" as a matter of law within the meaning of our aggravated assault statute. Code Ann. § 26-1302.

The case of *Riddle v. State,* 145 Ga. App. 328, 333 (3) (243 SE2d 607) (1978), and like cases are overruled to the extent that they hold or suggest that on facts as in the present case the issue of whether the instrument was a "deadly weapon" within the meaning of Code Ann. § 26-1302 properly is for the jury's determination. The trial court did not err in its instructions by taking the "deadliness" issue from the jury.

Another result is not suggested by the recent armed robbery "toy pistol cases" decided by the Court of Appeals. *Choate v. State,* 158 Ga. App. 8 (279 SE2d 459) (1981) (cap pistol); *Fann v. State,* 153 Ga. App. 634 (266 SE2d 307) (1980) (starter's pistol). See, *Pettiford v. State,* 235 Ga. 622 (221 SE2d 43) (1975) (cap pistol *and* a stick). As the Court of Appeals pointed out in *Choate* and *Fann,* the 1968 revision

of the armed robbery statute deleted from the former law all reference to "any replica, article or device having the appearance of such weapon." The effect of *Choate* and *Fann* was to exclude from consideration under Code Ann. § 26-1902 the reasonable apprehension of the victim concerning the true nature of the weapon-like object being pointed at him or her. See *Watts,* supra, at 858. On the other hand, the reasonable apprehensions of the victim regarding the device being pointed at him or her do matter for purposes of the aggravated assault statute. Code Ann. § 26-1302. *Watts,* supra. We note that the General Assembly has amended Code Ann. § 26-1902 effective April 9, 1981, so as to reinstate the "toy pistol" aspect of the former law. Ga. L. 1981, p. 1266. Hence, armed robbery now can be committed either with a real weapon or with a toy or replica weapon having the appearance of being real. *Choate* and *Fann* no longer are authority to the contrary.

The eighth, ninth and tenth enumerations of error are without merit.

*Judgment affirmed. Hill, P. J., Marshall, Clarke, Smith and Gregory, JJ., concur.*

DECIDED SEPTEMBER 29, 1981.

*Brimberry, Kaplan & MacDougald, Jerry W. Brimberry, Dan MacDougald,* for appellant.

*Thomas H. Pittman, District Attorney, C. Paul Bowden, Assistant District Attorney,* for appellee.