## S04A0319. FLORES v. THE STATE.
### (596 SE2d 114)

HINES, Justice.

A jury found Jason Flores guilty of the felony murder of Jesse Williamson while in the commission of aggravated assault by shooting him with a pellet gun; the aggravated assault of Williamson with a pellet gun; the aggravated assault of Eric Mitchell with a pellet gun; the involuntary manslaughter of Williamson while in the commission of reckless conduct; reckless conduct against Williamson; and reckless conduct against Mitchell. Flores was sentenced to life in prison with the possibility of parole for the felony murder and a concurrent year in prison for the aggravated assault of Mitchell. Following the denial of a motion for new trial, Flores challenges his convictions on the bases that the evidence of his guilt was insufficient and that the verdicts of guilty of felony murder and involuntary manslaughter are mutually exclusive. We find the evidence sufficient to support Flores's convictions. However, his conviction of felony murder cannot stand because, under the circumstances in this case, the verdicts of guilty of felony murder and involuntary manslaughter are mutually exclusive under *Jackson v. State*, 276 Ga. 408 (577 SE2d 570) (2003).[1]

---

[1] The crimes occurred on July 29, 2002. On January 30, 2003, a Paulding County grand jury indicted Jason Flores for the following: Count 1 – the felony murder of Jesse Williamson while in the commission of aggravated assault by shooting him with a pellet gun; Count 2 – the aggravated assault of Williamson with a pellet gun; Count 3 – the aggravated assault of Eric Mitchell with a pellet gun; Count 4 – the involuntary manslaughter of Williamson while in the commission of reckless conduct; Count 5 – reckless conduct against Williamson; Count 6 – reckless conduct against Mitchell; Count 7 – the involuntary manslaughter of Williamson while in the commission of possession of a pistol or revolver by a person under the age of 18 years; Count 8 – possession of a pistol or revolver by a person under the age of 18 years; and Count 9 – possession of a sawed-off shotgun. Flores was tried before a jury June 9-11, 2003, and was found guilty of Counts 1, 2, 3, 4, 5, and 6. Counts 7, 8, and 9 were dismissed by the trial court at the time of trial and were not considered by the jury. By order of final disposition signed June 17, 2003, and filed June 24, 2003, Flores was sentenced to life in prison with the possibility of parole on Count 1, the felony murder of Williamson, and a concurrent one year in prison on Count 3, the aggravated assault of Mitchell. The trial court

The evidence, construed in favor of the verdicts, showed that on the evening of July 29, 2002, Jason Flores and his friend, Matt Hardy, met with Nick Hatzileris, Jesse Williamson, and Eric Mitchell in a shopping center parking lot in Dallas, Georgia. The young men, who were all either friends or acquaintances, went to Flores's temporary residence. The residence was divided into two separate households: the lower level was rented to Flores's uncle and his family and the upstairs apartment was rented to the Calhoun family. Flores was staying in the screened-in back porch area attached to the upstairs apartment.

When the young men arrived at the home, the Calhouns were out of town and Flores's uncle and family were entertaining guests on the lower level. Prior to leaving town, Mr. Calhoun told Flores that he was not to enter the apartment unless there was an emergency. Nevertheless, when the young men arrived, they entered the upstairs apartment by way of the stairway at the rear of the house. They proceeded through the screened-in porch and into the Calhoun living room. Someone from the downstairs apartment came upstairs to see who was there and the young men hid in the kitchen. Flores spoke with this person, the individual went back downstairs, and the young men rejoined Flores in the living room.

Once in the living room, Hatzileris found a pellet gun, which he "cleared" by firing it into a pillow. After looking at the weapon, Hatzileris set it down on a coffee table. Williamson noticed that the muzzle of the gun was pointed at him and asked that it be moved. Hatzileris complied and the gun was repositioned so that the muzzle faced the wall.

Hardy, Hatzileris, and Mitchell then saw Flores with a pellet container in his hand. Flores began to scan the room with the pellet gun, waving it back and forth across the living room. Flores then pointed the gun directly at Mitchell who said, "[d]on't point it at me because I'm scared[,] I don't like guns." Williamson jumped up and yelled that the weapon was loaded, and Flores then pointed the gun at Williamson. Flores responded, "No it's not, look," and then pulled the trigger, hitting Williamson in the eye.

Williamson was life-flighted to a hospital in Atlanta, where he later died from irreversible brain damage caused by the penetration of the pellet through his eye and into his brain.

Approximately one month after the fatal shooting, Flores was overheard at school bragging about it. Flores stated, "Accidents hap-

---

found that Counts 2, 4, 5, and 6 merged for the purpose of sentencing. A motion for new trial was filed on June 27, 2003, amended on September 23, 2003, and denied on September 30, 2003. A notice of appeal was filed on October 6, 2003, and the case was docketed in this Court on October 23, 2003. The appeal was submitted for decision on December 15, 2003.

pen all the time. They could be good or they could be bad. Either way, you get away with it. . . . I wonder what kind of accident could happen next."

1. Flores contends that the evidence was insufficient to support the felony murder verdict because the facts clearly show that the shooting was an accident. Flores was charged with felony murder while in the commission of aggravated assault, and certainly accident can be a defense to the underlying felony of aggravated assault. *Tessmer v. State*, 273 Ga. 220, 223 (2) (539 SE2d 816) (2000). However, it was for the jury to determine whether the evidence showed an intentional act or that the shooting was an accident. *Clark v. State*, 271 Ga. 27, 29 (1) (518 SE2d 117) (1999). Here, the evidence, including Flores's statements following the shooting, authorized the jury to find Flores guilty beyond a reasonable doubt of the aggravated assault of Williamson and his resulting murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Flores is likewise unsuccessful in his contention that the trial court should have directed a verdict of acquittal on Count 3 of the indictment, charging him with the aggravated assault of Mitchell. He urges that the evidence showed that the two had not argued with each other, there was no hostility or animosity in the room, and on cross-examination Mitchell testified that he was not afraid of Flores, but just generally afraid of someone pointing a gun at him.

Contrary to the assertion that Mitchell was not placed in fear, on direct examination Mitchell testified that when Flores pointed the weapon at him, he responded, "[d]on't point it at me because I'm scared[,] I don't like guns." Regardless of whether Mitchell was afraid of Flores personally, this testimony demonstrated that Flores's action in pointing the weapon at Mitchell placed Mitchell in reasonable apprehension of receiving a violent injury. See OCGA § 16-5-20 (a) (2). "In reviewing a trial court's denial of a defendant's motion for directed verdict of acquittal, an appellate court applies the 'sufficiency of the evidence' test of *Jackson v. Virginia*, [supra]. *Morgan v. State*, 276 Ga. 72 (1) (575 SE2d 468) (2003)." *Oliver v. State*, 276 Ga. 665, 666 (1) (581 SE2d 538) (2003). The evidence was sufficient to enable a rational trier of fact to find Flores guilty beyond a reasonable doubt of the aggravated assault of Mitchell. Id.

3. However, Flores is correct in his assertion that *Jackson v. State*, supra, requires finding that the verdicts of guilty for felony murder and involuntary manslaughter are mutually exclusive.

A jury found Jackson guilty, inter alia, of felony murder based on aggravated assault and involuntary manslaughter based on reckless conduct in connection with a fatal shooting, and he was sentenced to life in prison for the felony murder. Jackson argued that the guilty verdicts for felony murder and involuntary manslaughter were

mutually exclusive because these verdicts reflected that the jury might have found that he acted with both criminal intent and criminal negligence in regard to the victim. *Jackson* at 408-409. This Court agreed, and set forth an analysis which requires reversal in the present case.

> Verdicts are mutually exclusive "where a guilty verdict on one count logically excludes a finding of guilt on the other. [Cits.]" *United States v. Powell*, 469 U. S. 57, 69 fn. 8 (105 SC 471, 83 LE2d 461) (1984). . . . Looking at the essential elements for both felony murder and involuntary manslaughter, OCGA §§ 16-5-1 (c), 16-5-3, guilty verdicts on these offenses are not mutually exclusive as a matter of law because felony murder, like involuntary manslaughter, does not require proof of a criminal intent to murder to support a conviction. *Smith v. State*, 267 Ga. 372 (6) (477 SE2d 827) (1996).

> That does not end the inquiry, however, because both felony murder and involuntary manslaughter are predicated upon the commission or omission of another offense or act. OCGA §§ 16-5-1 (c), 16-5-3. . . . [A] mutually exclusive verdict may be rendered in a particular case where the offenses or acts alleged in the indictment as underlying the felony murder and involuntary manslaughter counts reflect that the jury, in order to find the defendant guilty on both counts, necessarily reached "two positive findings of fact that cannot logically mutually exist." [Cit.] To determine whether this occurred, the alleged underlying offenses or acts must be carefully scrutinized.

Id. at 410 (2).

Flores was found guilty of felony murder based on an aggravated assault by use of a pellet gun. A pellet gun can be, and certainly was in this case, a deadly weapon. See *Mitchell v. State*, 222 Ga. App. 866, 867 (1) (476 SE2d 639) (1996), citing *Adsitt v. State*, 248 Ga. 237, 240 (6) (282 SE2d 305) (1981). In fact, Flores was separately charged with and found guilty of the aggravated assault of Williamson "with a pellet gun, a deadly weapon and an object which, when used offensively, is likely to and actually did result in serious bodily injury." See OCGA § 16-5-21 (a) (2). And, the jury was instructed regarding the offense of aggravated assault by use of a deadly weapon and that a pellet gun could be a deadly weapon. An assault may be committed in two ways, that is, when a person "[a]ttempts to commit a violent injury to the person of another," OCGA § 16-5-20 (a) (1), or when a person "[c]ommits an act which places another in reasonable appre-

hension of immediately receiving a violent injury[,]" OCGA § 16-5-20 (a) (2). *Jackson* at 411 (2).

As this Court explained in *Jackson*, there must be proof of criminal intent in order to obtain a conviction for aggravated assault with a deadly weapon based upon OCGA § 16-5-20 (a) (1); such an assault cannot be committed by criminal negligence. *Jackson* at 411 (2). In contrast, reckless conduct, which underlies the involuntary manslaughter conviction in this case, is not an intentional act, but rather one of criminal negligence. Id. Thus, a verdict of guilty of aggravated assault premised upon OCGA § 16-5-20 (a) (1) precludes the element of criminal negligence in reckless conduct. *Jackson* at 412 (2). However, this Court has clearly recognized that an assault under OCGA § 16-5-20 (a) (2) does not require that a defendant act with criminal intent in regard to the victim; the only intent that need be shown is the intent to commit the acts which caused the victim to be reasonably apprehensive of immediately receiving a violent injury. *Jackson* at 412, n. 5. Accordingly, an assault conviction under OCGA § 16-5-20 (a) (2) does not exclude a finding of guilt for reckless conduct. Id.

In this case, *Jackson* mandates that subsection (a) (2) of the assault statute, OCGA § 16-5-20, cannot be relied upon to reconcile the conflict between the guilty verdicts for felony murder and involuntary manslaughter. See *Jackson* at 412, n. 5. First, the language of the indictment was broad enough to charge Flores with felony murder based upon an aggravated assault premised on either subsection (a) (1) or (a) (2) of OCGA § 16-5-20.[2] Second, the evidence was sufficient to support a verdict of guilty for an assault under either prong of OCGA § 16-5-20, and consequently, the trial court charged the jury regarding a definition of aggravated assault underlying the felony murder which included an assault under either subsection (a) (1) or (a) (2).[3] What is more, the jury was told that it could return a verdict of guilty on any count submitted for its consideration. Here, as in

---

[2] Count 1 of the indictment charged that Flores, "did unlawfully, when in the commission of a felony, to wit: Aggravated Assault, cause the death of . . . Williamson, . . . by shooting him with a pellet gun, in violation of O. C. G. A. Section 16-5-1 (c), . . ."

Count 2 charged Flores with the offense of aggravated assault, in that, he "did unlawfully, assault . . . Williamson . . . with a pellet gun, a deadly weapon, and an object which, when used offensively is likely to and actually did result in serious bodily injury, in violation of O. C. G. A. Section 16-5-21 (a) (2), . . ."

[3] Although in parts of the charge and recharge, the court used language under subsection (a) (2) of OCGA § 16-5-20, it initially instructed the jury, with regard to the charged felony murder and the underlying assault aggravated by the use of a deadly weapon, that subsection (a) (1) of OCGA § 16-5-20 was implicated:

It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim [(a) (1)] or intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury [(a) (2)].

*Jackson*, the jury did not indicate on the verdict form which assault subsection served as support for the aggravated assault underlying the felony murder. *Jackson* at 412, n. 5. *Jackson* prohibits this Court from making the finding that the felony murder verdict rested solely on OCGA § 16-5-20 (a) (2), and thus does not eliminate the "reasonable probability" that the jury found that Flores acted with both criminal intent and criminal negligence in the same fatal conduct of pointing the pellet gun at Williamson and firing. Id.

Accordingly, Flores's judgment of conviction for felony murder is reversed and he must be granted a new trial.[4]

*Judgment affirmed in part and reversed in part. All the Justices concur.*

CARLEY, Justice, concurring.

I concur fully in the majority opinion, but write separately to expound upon the "mutually exclusive verdicts" issue discussed in Division 3.

Although I filed a rather strong dissenting opinion in *Jackson v. State*, 276 Ga. 408 (577 SE2d 570) (2003), it is now the law of Georgia and I am bound to follow it when applicable. The circumstances in this case are very similar to those present in *Jackson*. Here, as there, the jury returned guilty verdicts on a count alleging felony murder during the commission of aggravated assault, and on an alternative count charging the involuntary manslaughter of the same victim through reckless conduct. According to *Jackson*, these two guilty verdicts would be mutually exclusive in the event that the aggravated assault supporting the murder count represents a finding that Flores acted intentionally under subsection (a) (1) of OCGA § 16-5-20 when he shot Williamson, since the involuntary manslaughter verdict clearly reflects the finding that he acted only with criminal negligence when he did so. Thus, the verdicts are mutually exclusive if they indicate that the jury found that Flores shot the victim both intentionally and unintentionally.

Under *Jackson*, supra at 412 (2), fn. 5, the verdicts are reconcilable only if the aggravated assault underlying the murder count was based upon Williamson's fear in accordance with subsection (a) (2) of OCGA § 16-5-20, rather than predicated upon Flores' intent to harm him under subsection (a) (1) of that statute. In that event, there would be no conflict over whether the gun was fired intentionally or

---

[4] Flores must be given a new trial on those counts of the indictment charging his criminal conduct against Williamson. Flores's conviction for the aggravated assault of Mitchell is not implicated in the finding of mutually exclusive verdicts regarding the felony murder of Williamson and the involuntary manslaughter of Williamson; therefore, the judgment of conviction for the aggravated assault of Mitchell is affirmed.

negligently. As to both the aggravated assault and the reckless conduct, Flores would have acted without any intent to shoot the victim.

This case differs from *Jackson* in that the separate count charging that Flores committed aggravated assault was based upon subsection (a) (2) of OCGA § 16-5-20. As the majority points out, however, the relevant count is that alleging the felony murder of Williamson, and that count is broad enough to encompass Flores' commission of aggravated assault under both subsection (a) (1) and (a) (2) of the statute. Moreover, the evidence is sufficient to authorize a finding of his guilt under either subsection, and the trial court, when instructing on the felony murder charge, informed the jury that

> [i]t is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim *or* intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury. (Emphasis supplied.)

Thus, the jury clearly received instructions as to both subsections (a) (1) and (a) (2) of OCGA § 16-5-20 in connection with the felony murder count. After giving that inclusive charge, the trial court immediately instructed the jury that

> [i]f you find and believe beyond a reasonable doubt that the defendant committed the homicide alleged in this bill of indictment at the time the defendant was engaged in the commission of the felony of aggravated assault *as I have previously defined it to you*, then you would be authorized to find the defendant guilty of murder, whether the homicide was intended or not. (Emphasis supplied.)

This charge, in effect, authorized the jury to find Flores guilty of felony murder if it found that he committed aggravated assault under either subsection (a) (1) or (a) (2) of OCGA § 16-5-20. Although the language in the trial court's subsequent charge and recharge in connection with the separate aggravated assault count was properly limited to subsection (a) (2), the broader charge on felony murder during the commission of aggravated assault was never withdrawn. As to the guilty verdict on that felony murder count, the jury did not indicate which subsection of the aggravated assault statute it found to be the predicate offense. Giving Flores the benefit of the doubt, we must consider the verdict on that count to be based on the finding of intentional aggravated assault under subsection (a) (1) and, thus, to be "mutually exclusive" of the guilty verdict for reckless conduct. Since the two verdicts are not indisputably compatible and may represent

inconsistent findings that Flores acted both intentionally and unintentionally when he fired the fatal shot, *Jackson* mandates a new trial on the felony murder and involuntary manslaughter counts.

The majority never clearly identifies the error on the part of the trial court which mandates reversal as to those two counts. According to our previous cases, that error lies in the trial court's improper charge to the jury. See *Dumas v. State*, 266 Ga. 797, 800 (2) (471 SE2d 508) (1996); *Thomas v. State*, 261 Ga. 854, 856 (1) (413 SE2d 196) (1992). Thus, where, as here, the indictment contains alternative counts alleging potentially mutually exclusive crimes, the trial court "should have instructed the jury that a guilty verdict could be returned upon either count but not both." *Milanovich v. United States*, 365 U. S. 551, 554-555 (81 SC 728, 5 LE2d 773) (1961) (cited with approval in *Thomas v. State*, supra at 855 (1)). The error noted in *Jackson*, supra at 410 (2), was that, "rather than instructing the jury not to return a mutually exclusive verdict, the jury . . . was expressly charged that it could render a verdict of guilty on every count in the indictment." The trial court in this case likewise expressly instructed the jury that it should return a verdict on every count, and failed to charge that guilty verdicts could not be returned as to both the felony murder and involuntary manslaughter counts if the jury found that the fatal aggravated assault was based upon Flores' intentional act of shooting Williamson.

> [W]here there are mutually exclusive convictions, it is insufficient for an appellate court merely to set aside the lesser verdict, because to do so is to speculate about what the jury might have done if properly instructed, and to usurp the functions of both the jury and the trial court. [Cit.]

*Dumas v. State*, supra at 800 (2). As the result of the error in the charge, Flores is entitled to a new trial as to those counts.

For the benefit of the bench and bar, it should be noted that the principle of mutually exclusive verdicts sets a potential trap for the unwary. In criminal cases, the accused need not formally object to jury instructions. OCGA § 5-5-24 (a). Thus, the defendant who does not object to the erroneous charge can still raise the mutually exclusive verdicts issue on appeal. Indeed, even an accused who induced the erroneous instruction will be entitled to a new trial, because the judgment entered on a mutually exclusive verdict is deemed void. *Jackson v. State*, supra at 410 (2), fn. 2. In this case, Flores did not induce the trial court's erroneous charge, but, when the trial court asked whether he had any objections, he responded in the negative. While this would constitute a waiver of the right to enumerate error as to the charge itself, I assume that, under *Jackson*, waiver, like

induced error, will not prevent Flores from relying upon the principle of mutually exclusive verdicts to attack the void felony murder judgment on appeal.

Since there is no requirement that the issue ever be raised below, our trial judges and prosecuting attorneys would be well advised to exercise extreme caution in a case in which the indictment or accusation charges alternative offenses which may result in mutually exclusive verdicts.

> [A] mutually exclusive verdict may be rendered in a particular case where the offenses or acts alleged in the indictment [or accusation] . . . reflect that the jury, in order to find the defendant guilty on both counts, [must] necessarily reach[ ] "two positive findings of fact that cannot logically mutually exist." [Cit.] To determine whether this [can] occur[ ], the alleged underlying offenses or acts must be carefully scrutinized.

*Jackson v. State*, supra at 410-411 (2). Thus, instructions requested by the prosecution and defense in a criminal case involving alternative counts which are potentially mutually exclusive should be scanned with care to insure that the jury is not told that it can return verdicts as to all counts, and that it is informed that the defendant can be found guilty on only one of mutually exclusive charges. Where proper charges are not requested by either side, the trial court should give them sua sponte. If the trial court fails to give the necessary instructions, the error in its charge can be cured by examining the verdicts to determine if they are mutually exclusive and, if they are, by sending the jury back for further consideration as to which crime the defendant is guilty of committing. See *Dumas v. State*, supra at 798 (2). However, where, as here, the proper instructions are neither requested nor given sua sponte, and the error is not corrected by the trial court's subsequent refusal to accept mutually exclusive verdicts returned by the jury, the defendant must be granted a new trial as to the two offenses. *Jackson v. State*, supra.

DECIDED APRIL 27, 2004.

*Teddy L. Henley*, for appellant.

*James R. Osborne, District Attorney, Theo M. Sereebutra, Assistant District Attorney, Thurbert E. Baker, Attorney General, Raina Nadler, Assistant Attorney General*, for appellee.