## S13A0861. WALKER v. THE STATE.
(749 SE2d 663)

NAHMIAS, Justice.

Appellant Macques Antonio Walker was found guilty of the felony murder of Evangelina Hernandez-Contreras based on aggravated assault; two counts of homicide by vehicle, one based on reckless driving and one based on the failure to stop and render aid to Hernandez-Contreras after being involved in an automobile accident; failure to stop and render aid to Hernandez-Contreras; aggravated assault of Roberto Contreras; and driving with no proof of insurance.[1] The trial court treated the guilty verdicts on both counts of homicide by vehicle and the failure to stop and render aid count as merged into the felony murder conviction and entered judgment of convictions for felony murder, aggravated assault, and no proof of insurance.

On appeal, we affirm the convictions for aggravated assault and driving with no proof of insurance. However, because the guilty verdicts for felony murder based on aggravated assault (a criminal intent crime) and homicide by vehicle based on reckless driving (a criminal negligence crime) are mutually exclusive under our established precedent, we must reverse Appellant's conviction for felony murder, set aside the guilty verdicts for felony murder and homicide by vehicle based on reckless driving, and remand the case for a possible new trial on those charges.[2] We also conclude that there was

---

[1] The incident at issue occurred on July 27, 2003. On January 9, 2004, a Cobb County grand jury indicted Appellant on the following seven counts: (1) malice murder of Hernandez-Contreras; (2) felony murder of Hernandez-Contreras, predicated on aggravated assault with a deadly weapon (a motor vehicle); (3) homicide by vehicle of Hernandez-Contreras, predicated on the failure to give information and render aid, see OCGA § 40-6-270; (4) homicide by vehicle of Hernandez-Contreras, predicated on reckless driving; (5) aggravated assault of Contreras with a deadly weapon (a motor vehicle); (6) failure to stop and render aid to Hernandez-Contreras; and (7) driving with no proof of insurance. On October 15, 2004, after trial, a jury found Appellant not guilty of malice murder but guilty of all other charges. The trial court sentenced him to life in prison for felony murder, ten years in prison for the aggravated assault of Contreras, and 12 months in prison for driving with no proof of insurance, with all of the sentences to run concurrently. Both homicide by vehicle counts were vacated as a matter of law; the trial court also erroneously merged the failure to stop and render aid count into the felony murder conviction for sentencing purposes, as discussed in Division 3 (b) below. Appellant's trial attorney filed a motion for new trial on October 18, 2004. Appellant was then appointed new appellate counsel, but the case unaccountably languished for many years until that lawyer was replaced with Appellant's current counsel, who filed an amended motion for new trial on June 20, 2012. On July 25, 2012, the trial court denied the motion. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2013 term and submitted for decision on the briefs.

[2] We recognize the difficulties the parties may face if the State elects to re-try either or both of these charges more than a decade after the alleged crimes occurred and more than nine years after the original trial. But we also note that the parties have provided no good explanation for

insufficient evidence to support the guilty verdict for homicide by vehicle based on the failure to stop and render aid, so on remand no conviction may be entered on that count.

1. Viewed in the light most favorable to the verdict, the evidence at trial showed the following. On July 27, 2003, Appellant was driving his Oldsmobile with his girlfriend, Markenna Ramsby, in the passenger's seat when he cut in front of Contreras, who was driving in his minivan with his wife, Hernandez-Contreras, and his grandson. Appellant then moved one lane to the left of Contreras, and the two vehicles came to a stop at a traffic light.

When the vehicles stopped, Contreras got out of his minivan, went to the driver's side window of Appellant's car, and yelled at him. Hernandez-Contreras got out of the minivan to pull her husband away from Appellant's window. As Contreras and Hernandez-Contreras passed behind Appellant's car on their way back to the minivan, Appellant looked back toward them, shifted his car into reverse, and backed into the couple. Contreras was knocked down on the road out of the car's path, but Hernandez-Contreras was knocked down behind the car, which continued backward over her, trapping her under the rear axle. Appellant accelerated his car backward very fast and swerved to miss another car, dragging Hernandez-Contreras underneath and leaving a two-foot wide, 98-foot long trail of her skin tissue, blood, and clothing on the road. Hernandez-Contreras was eventually dislodged and her body lay about 20 feet in front of Appellant's car. Appellant then shifted his car into drive and ran over her again, dragging her body forward another 48 feet before she was dislodged and Appellant sped away from the scene.

The medical examiner testified at trial that Hernandez-Contreras died from generalized trauma. She had several areas of hemorrhage around her brain and neck; all of her front ribs and most of her back ribs were fractured, along with her right elbow and both bones in her lower right leg; her liver was lacerated; and about 70 percent of her skin was abraded.

A witness chased Appellant as he fled. The witness drove as fast as 85 miles per hour to keep up with Appellant's car and got close enough for his wife to write down the Oldsmobile's license plate number before he broke off the chase. Appellant drove to Ramsby's

---

the extraordinary delay in resolving Appellant's motion for new trial so that this appeal could proceed. "As we have emphasized in other recent cases involving post-trial delay, 'it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay.'" *Johnson v. State*, 292 Ga. 22, 22 n. 2 (733 SE2d 736) (2012) (citation omitted).

grandmother's apartment building, parked the Oldsmobile outside, and removed the license plate. A security officer at the building later identified the car, and the police seized it on July 28. They found hair and blood on the underside of the car; a sample of the blood was matched to Hernandez-Contreras by DNA testing. After being identified by police as a suspect, Appellant turned himself in on July 30.

At trial, Appellant testified that he accidentally ran over Hernandez-Contreras as he was trying to get away from Contreras because his girlfriend told him that Contreras had a gun, although he never saw a gun or other weapon. Appellant said that Contreras approached his car, reached through his window, and tried to pull him out, and he then tried to escape by driving away. Appellant claimed that he did not know how the car shifted into reverse (although one eyewitness testified that she saw him shift the car into reverse), that he did not have his hands on the steering wheel when he was backing up (although his car swerved to avoid another car), and that he did not see Hernandez-Contreras either when he backed into her or when he shifted the car into drive and ran over her again (although he admitted he was sitting up in the car by that time). Appellant also testified that he drove at 45 miles per hour while leaving the scene and that he removed the license plate from his car when he arrived at Ramsby's grandmother's apartment because that was his standard practice when leaving the car at someone else's house. Appellant maintained that he did not know that Hernandez-Contreras had been hit and that he did not immediately report to the police that he had been threatened by a man with a gun because he did not know who Contreras was, although he admitted on cross-examination that he saw on the news that there had been a homicide at the intersection where the incident occurred.

With the exception of homicide by vehicle based on the failure to stop and render aid, which we will address below in Division 3, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which the jury returned guilty verdicts. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation omitted)).

2. (a) Six eyewitnesses, including Contreras and his grandson, testified at trial that they saw Appellant's car hit and drive over Hernandez-Contreras, dragging her up and down the road. So the main issue at trial was not whether Appellant had struck and killed Hernandez-Contreras with his car but rather what his intent was at

the time. Covering its bases, the State charged Appellant with both crimes that required criminal intent (malice murder and felony murder based on aggravated assault) and a crime that required only criminal negligence (homicide by vehicle based on reckless driving). See *Dryden v. State*, 285 Ga. 281, 282 (676 SE2d 175) (2009) (explaining that "reckless driving, OCGA § 40-6-390, is a crime founded upon an act of criminal negligence, rather than an intentional act"). Unfortunately for the State, the trial court failed to instruct the jury that it could not find Appellant guilty of both types of crimes, and the court then accepted the jury's guilty verdicts for both felony murder based on aggravated assault and homicide by vehicle based on reckless driving. Appellant contends that, under this Court's precedents, those guilty verdicts were mutually exclusive and must be set aside. He is correct.

In *Jackson v. State*, 276 Ga. 408 (577 SE2d 570) (2003), which was decided the year before Appellant was tried, this Court reversed verdicts finding the defendant guilty of both felony murder based on aggravated assault and involuntary manslaughter based on reckless conduct on the ground that the verdicts were mutually exclusive. See id. at 408. We concluded that such verdicts reflected an "illogical finding by the jury that [the defendant] acted with both criminal intent and criminal negligence in shooting the victim," id. at 411, and we held that "a jury may not properly render verdicts of guilt as to both [criminal intent and criminal negligence] offenses in those factual situations involving the same act by the accused as to the same victim at the same instance of time." Id. at 412 n. 4. See also *Flores v. State*, 277 Ga. 780, 783-785 (596 SE2d 114) (2004) (holding that guilty verdicts for felony murder based on aggravated assault and involuntary manslaughter based on reckless conduct were mutually exclusive where the defendant pointed a gun he allegedly believed was unloaded at the victim and pulled the trigger, killing the victim).

*Jackson* noted that guilty verdicts for crimes that require criminal intent and crimes that require criminal negligence do not exclude each other in every instance, explaining that "in those situations where the offenses underlying the convictions can be reconciled by looking to either the legal requirements for each underlying offense or to the unique facts adduced at trial," the convictions are not mutually exclusive. 276 Ga. at 411. The State seizes on this caveat to make several arguments seeking to distinguish this case from *Jackson*, but those arguments are unavailing.

(b) The State first argues that the verdicts here were not mutually exclusive because the jury could have found that the aggravated assault that was the predicate for the felony murder charge was based on OCGA § 16-5-20 (a) (2) (assault by placing the victim "in

reasonable apprehension of immediately receiving a violent injury"), which does not require that the defendant act with a specific intent toward the victim, rather than on OCGA § 16-5-20 (a) (1) (assault by attempting "to commit a violent injury to the person of another"), which does require specific intent. See *Jackson*, 276 Ga. at 412 n. 5. In *Jackson*, however, this Court rejected the same argument, explaining:

> A review of the language of the indictment reveals that it was sufficient to charge Jackson with an assault based on either (a) (1) or (a) (2) in regard to the aggravated assault underlying the felony murder charge. There was sufficient evidence adduced to support a verdict based upon either subsection and the jury was charged accordingly. However, the verdict form returned by the jury did not specify which aggravated assault subsection served as the underlying felony for the felony murder conviction. Thus, we cannot conclusively state that the verdict rested exclusively on the subsection (a) (2) ground so as to eliminate the reasonable probability that the jury might have returned a mutually exclusive verdict by finding Jackson acted with both criminal intent and criminal negligence at the same time as to the same victim.

*Jackson*, 276 Ga. at 412 n. 5. See also *Dryden*, 285 Ga. at 283.

In this case too, the indictment, the evidence, the jury instructions, and the verdict form all allowed the jury to find Appellant guilty of aggravated assault and thus felony murder based on either OCGA § 16-5-20 (a) (1) or (a) (2). Consequently, there is a reasonable probability that the jury returned mutually exclusive verdicts.

(c) The State also argues that the verdicts were not mutually exclusive because they were based on two distinct acts. In *Mills v. State*, 280 Ga. 232 (626 SE2d 495) (2006), we held that convictions for felony murder based on aggravated assault and homicide by vehicle based on reckless driving were not mutually exclusive when the indictment charged felony murder based on the defendant's driving at the victim and homicide by vehicle based on an improper lane change. See id. at 234. In *Mills*, the evidence at trial showed that the defendant's van had cut into the lane where the victim was driving and forced him off the interstate two times; after the victim re-entered the highway the second time, the defendant rammed his van into the victim's truck and then continued to drive at the truck, pushing it along the interstate until it spun out of control and flipped over, killing the driver. See id. at 233.

Similarly, in *Smith v. State*, 288 Ga. 348 (703 SE2d 629) (2010), we concluded that guilty verdicts for felony murder based on cruelty to children and involuntary manslaughter were not mutually exclusive because the evidence showed that the defendant mother had committed numerous acts of abuse against her son, including striking him with various objects and confining him in a small room. See id. at 348 n. 1, 350. We explained that

> the evidence authorized the jury to logically conclude that [the mother] had committed several acts of abuse against her son, some of which may have been non-felony acts of abuse that inadvertently led to or contributed to her son's death, and others that may have constituted felony cruelty to children, which would have served as the underlying basis for the felony murder conviction.

Id. at 350-351 (citations omitted).

By contrast, in *Dryden* we rejected the State's argument that guilty verdicts for aggravated assault and serious injury by vehicle based on reckless driving were not mutually exclusive because they were based on distinct acts. The defendant there drove his car toward a police officer who was trying to stop him from fleeing a crime scene, injuring the officer's leg by pinning it against another vehicle, and then sped away. See *Dryden*, 285 Ga. at 281. The State argued that the jury could have found that the defendant committed aggravated assault when he first steered his car toward the officer and so "was then free to find an additional fact pattern to support a finding of guilt on the crime of serious injury by vehicle." Id. at 282-283. The Court of Appeals agreed, concluding that the guilty verdict for serious injury by vehicle based on reckless driving could have been based on the defendant's efforts to break away from the officers and flee the scene at a high rate of speed. See id. at 283.

But we reversed the Court of Appeals, explaining that neither the indictment nor the jury instructions specified that the aggravated assault charge was based on the defendant's causing the officer to reasonably apprehend receiving a violent injury by driving at him rather than by the defendant's attempting to commit a violent injury. See *Dryden*, 285 Ga. at 284. We concluded that

> "*Jackson* prohibits this Court from making the finding that the felony murder verdict rested solely on aggravated assault under OCGA § 16-5-20 (a) (2), and thus does not eliminate

the 'reasonable probability' that the jury found that [the defendant] acted with both criminal intent and criminal negligence."

Id. at 284 (citation omitted).

The protracted vehicular dance in *Mills* and the numerous and varying acts of child abuse in *Smith* are quite different from the facts of this case. Here, within a matter of seconds, Appellant drove in reverse, hitting both Contreras and Hernandez-Contreras and dragging Hernandez-Contreras 98 feet; drove forward, hitting Hernandez-Contreras again and dragging her another 48 feet; and then fled the scene. Hernandez-Contreras died of generalized trauma, the source of which was not attributed to either impact or dragging alone. As in *Dryden*, the State in this case never separated out Appellant's actions as predicates for different crimes. The indictment did not allege that the felony murder based on aggravated assault and the homicide by vehicle based on reckless driving resulted from distinct acts; the jury was not instructed to consider Appellant's backing up and driving forward as two separate acts that caused two separate crimes; and the State's closing argument treated those acts together. Indeed, the prosecutor told the jury that the first thing it needed to do was decide whether Appellant acted with or without criminal intent in killing Hernandez-Contreras, which would determine if the jury's verdicts would be for malice murder and felony murder on one side of the intent "dividing line" or homicide by vehicle on the other. But the jury did not follow the prosecutor's advice, and there is at least a "reasonable probability" that the jury returned a mutually exclusive verdict by convicting Appellant of both felony murder and homicide by vehicle based on reckless driving. See *Jackson*, 276 Ga. at 412 n. 5.

(d) Finally, the State argues that the verdicts were not mutually exclusive because this case involves two separate victims. There were two victims, and Appellant was convicted of aggravated assault against Contreras. But there was only one *homicide* victim — Evangelina Hernandez-Contreras — and the mutually exclusive verdicts were on counts charging homicide crimes committed against that one victim. This case is therefore unlike the case on which the State primarily relies, where we found that guilty verdicts were not mutually exclusive because they were based on crimes committed against different victims. See *Sanchez v. State*, 285 Ga. 749 (684 SE2d 251) (2009). In *Sanchez*, the defendant hit two people while driving forward in his truck; he then put his truck in reverse and backed over one of the victims, shifted into drive, and ran over that victim a third time, killing him. See id. at 750. The defendant was convicted of felony murder based on aggravated assault in connection with the

deceased victim and reckless conduct in connection with injuries sustained by the second victim. See id. at 749. As charged in this case, however, both the aggravated assault that served as the predicate for the felony murder and the homicide by vehicle based on reckless driving were alleged to have been committed against only Hernandez-Contreras.

(e) As Justice Carley noted in his concurrence in *Flores*, the error in this type of case "lies in the trial court's improper charge to the jury," because where "the indictment contains alternative counts alleging potentially mutually exclusive crimes, the trial court should have instructed the jury that a guilty verdict could be returned upon either count but not both." *Flores*, 277 Ga. at 787 (citation and punctuation omitted). To avoid potentially invalid verdicts, even if "proper charges are not requested by either side, the trial court should give them sua sponte." Id. at 788.[3]

As mentioned previously, the prosecutor in closing argument told the jury that it needed to determine whether Appellant intended to injure Hernandez-Contreras and then find him guilty of crimes on one side of the intent "dividing line" or the other, not both. But like the trial court in *Flores*, the court in this case charged the jury to consider each count of the indictment individually, failing to instruct the jury that it could not return guilty verdicts as to both the murder and the homicide by vehicle based on reckless driving counts. Even after the jury initially returned its mutually exclusive verdicts, the trial court might have cured the problem by advising the jury of the *Jackson* rule and sending the jury back for further deliberations and return of a proper verdict. See *Dumas v. State*, 266 Ga. 797, 800 (471 SE2d 508) (1996). But the trial court did not do that either, and Appellant was found guilty of mutually exclusive crimes. Accordingly, we must reverse Appellant's felony murder conviction, set aside his guilty verdicts for both felony murder (Count 2) and homicide by vehicle based on reckless driving (Count 4), and remand for a new trial on those counts. See *Jackson*, 276 Ga. at 413 ("Where there are mutually exclusive convictions, it is insufficient for an appellate court merely to set aside the lesser verdict, because to do so is to speculate about

---

[3] Justice Carley astutely recognized that the mutually exclusive verdict doctrine "sets a potential trap for the unwary" trial judge since "even an accused who induces the erroneous instruction will be entitled to a new trial, because the judgment entered on a mutually exclusive verdict is deemed void." *Flores*, 277 Ga. at 787 (Carley, J., concurring). We note that the pattern jury instructions for criminal cases do not address the potential for mutually exclusive verdicts in situations where the indictment charges both criminal intent and criminal negligence crimes. A pattern instruction alerting judges and parties to this issue and how to address it would be valuable.

what the jury might have done if properly instructed, and to usurp the functions of both the jury and trial court." (citation and punctuation omitted)).

3. Appellant's guilty verdict on Count 3 (homicide by vehicle, in violation of OCGA § 40-6-393 (a), based on the failure to stop and render aid, in violation of OCGA § 40-6-270 (a)) was vacated as a matter of law because he was convicted of felony murder based on the same crime. See *Diamond v. State*, 267 Ga. 249, 251 (477 SE2d 562) (1996). Because we are reversing the felony murder conviction, the guilty verdict on Count 3 no longer stands vacated as a matter of law and, if the State does not re-try and convict Appellant on the felony murder count or the reckless-driving homicide by vehicle count, it could normally elect on remand to have a conviction and sentence imposed on the Count 3 homicide by vehicle charge. See *Cochran v. State*, 276 Ga. 283, 285 (576 SE2d 867) (2003). In this situation, we have sometimes said that if the State pursues the latter alternative, the defendant will have the right to appeal from the newly entered conviction and sentence. See *Pace v. State*, 274 Ga. 69, 70 (548 SE2d 307) (2001). This protects the right to appeal of a defendant who may not have raised issues regarding a verdict that was vacated or merged. In this case, however, Appellant argues that the evidence presented at trial did not support his guilty verdict on Count 3, which would bar entry of a conviction on that count. Under these circumstances, it is appropriate to address that argument. We also address Appellant's contention that Count 6 (failure to stop and render aid) merges with Count 3.[4]

(a) OCGA § 40-6-270 (a) requires that the driver of "any vehicle involved in an accident resulting in injury to or the death of any person" stop at the scene of the accident and render "reasonable assistance" to anyone injured. See *Bell v. State*, 293 Ga. 683, 686 (748 SE2d 382) (2013) (concluding that OCGA § 40-6-270 does not violate

---

[4] As Appellant points out, Count 3 of the indictment alleged that he committed homicide by vehicle based on his violation of "OCGA Section 40-6-271," which deals with the duty of a driver who strikes an unattended vehicle. That statute obviously does not apply in this case. Appellant also correctly notes that Count 6 of the indictment charged him with violating the "Duty of a Driver" but did not refer to a specific Code section. The indictment did, however, specifically allege in Count 6 that the duty Appellant violated was his duty to stop, remain at the scene, and render reasonable assistance after being involved in the accident injuring and killing Hernandez-Contreras. Appellant clearly was not misled by the miscitation in Count 3 or by the lack of a statutory reference in Count 6, and he waived any objection to the form of the indictment by failing to raise it in a timely special demurrer. See *Dasher v. State*, 285 Ga. 308, 310 (676 SE2d 181) (2009) ("The failure to file a timely special demurrer seeking additional information constitutes a waiver of the right to be tried on a perfect indictment."); OCGA § 17-7-110 ("All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court.").

the constitutional right against self-incrimination). There was ample evidence presented at trial that Appellant violated OCGA § 40-6-270 by fleeing after hitting Hernandez-Contreras, rather than stopping to assist her; the guilty verdict on Count 6 was therefore fully supported.

However, at the time Appellant ran over Hernandez-Contreras in 2003, a conviction for homicide by vehicle based on a violation of OCGA § 40-6-270 required proof that Appellant's failure to stop and render aid *caused* the victim's death. The then-applicable version of OCGA § 40-6-393 (a) said, "Any person who, without malice aforethought, *causes the death of another person through the violation of . . . Code Section 40-6-270 . . .* commits the offense of homicide by vehicle in the first degree." (Emphasis added.) See *Klaub v. Battle*, 286 Ga. 156, 158 (686 SE2d 117) (2009) (reversing a conviction for vehicular homicide based on failure to stop and render aid when the State failed to prove beyond a reasonable doubt that the victim's death was caused by the defendant's failure to stop and render aid); *Henry v. State*, 289 Ga. App. 893, 895-897 (645 SE2d 32) (2007) (whole court) (same).[5]

At trial, Contreras testified that his wife died in his arms at the scene, and the medical examiner testified that Hernandez-Contreras died from the horrific generalized trauma that she had suffered. There was no evidence that Hernandez-Contreras would have survived her injuries if Appellant had stopped to assist her. Because there was insufficient evidence for a rational jury to find Appellant guilty of homicide by vehicle based on his failure to stop and render aid, we set aside the guilty verdict on Count 3, and Appellant may not be re-tried on this count. See *Brantley v. State*, 272 Ga. 892, 893 (536 SE2d 509) (2000) ("The Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." (citation and punctuation omitted)).

(b) Appellant also argues that the guilty verdict returned on Count 6 (failure to stop and render aid) merged into Count 3 (homicide by vehicle based on a failure to stop and render aid). In sentencing Appellant, the trial court treated both of those counts as merged into the conviction on Count 2 (felony murder). That was erroneous, but Appellant's contention is also incorrect.

A guilty verdict on a charge of failing to stop and render aid would normally merge, as a lesser included offense, into a conviction for

---

[5] In 2008, after the Court of Appeals's 2007 decision in *Henry*, the General Assembly amended OCGA § 40-6-393 to eliminate the requirement that the driver's failure to stop and render aid caused the victim's death. See current OCGA § 40-6-393 (b); Ga. L. 2008, pp. 1164, 1165-1166.

homicide by vehicle based on the failure to stop and render aid. See OCGA § 16-1-7 (a) (1). In this case, however, because the guilty verdict on the Count 3 homicide by vehicle charge was vacated as a matter of law as a result of the Count 2 felony murder conviction involving the same single homicide victim, the guilty verdict on Count 6 (failure to stop and render aid) could not merge into Count 3. See *Diamond*, 267 Ga. at 251. See also *Malcolm v. State*, 263 Ga. 369, 373 (434 SE2d 479) (1993) (explaining that when a felony murder count has been vacated as a matter of law, "there is no felony murder count into which the underlying felony can merge"). And because the failure to stop and render aid charge (Count 6) requires proof of facts different from the facts needed to prove felony murder based on aggravated assault (Count 2), Count 6 also would not merge into Count 2. See *Drinkard v. Walker*, 281 Ga. 211, 211 (636 SE2d 530) (2006); *Mills*, 280 Ga. at 232 n. 1. See also *Malcolm*, 263 Ga. at 373 (treating the guilty verdict for felony murder as "merely surplusage" to the guilty verdict for malice murder and proceeding to determine if the underlying felony merged into the malice murder count).

Thus, the trial court erred in merging Count 6 into Count 2. See *Diamond*, 267 Ga. at 251 ("Since the vehicular homicide counts were treated as surplusage and the underlying traffic offense did not merge . . . into the felony murder counts, the trial court properly sentenced [the defendant] for the separate [underlying] offense of driving under the influence."). And there is no possibility that, even if the State elects not to re-try the felony murder (Count 2) and reckless-driving homicide by vehicle (Count 4) charges, Count 6 could merge with Count 3 on remand, because we have set aside the guilty verdict on Count 3 and Appellant cannot be retried on that count. See Division 3 (a) above. Accordingly, on remand, the trial court may impose a conviction and sentence for failure to stop and render aid based on Appellant's guilty verdict on Count 6. See *Harris v. State*, 286 Ga. 245, 253 (686 SE2d 777) (2009) (holding that the reversal of a conviction allows the guilty verdict that had merged into it to "unmerge" and a conviction and sentence to be entered on that count after remand).

4. Appellant contends that the trial court's jury instructions regarding reckless driving and aggravated assault were erroneous.

(a) Appellant is correct that the trial court erred in failing to give the jury any instructions on the elements of homicide by vehicle based on reckless driving or the elements of reckless driving. See *Hayes v. State*, 279 Ga. 642, 646 (619 SE2d 628) (2005) (" 'In a criminal case, it is incumbent upon the trial judge, with or without request, to give the appropriate instructions as to the law on each substantive point or issue involved in the case . . . .' ") (citation omitted). Because we

are setting aside the guilty verdict for homicide by vehicle based on reckless driving (Count 4) for the reasons given in Division 2 above, we need not decide whether this instructional error affected that verdict, but the error should not be repeated if Count 4 is retried.

(b) Appellant's arguments as to the aggravated assault instruction are unpersuasive.[6] He first contends that the trial court should have defined aggravated assault twice — once as part of the instruction on the count of felony murder of Hernandez-Contreras and again when explaining the charge of aggravated assault against Contreras. The court defined aggravated assault when instructing on the felony murder count, and the court also explained while reviewing the verdict form: "Count Five charges [Appellant] with the offense of aggravated assault . . . upon the person of Roberto Contreras rather than his wife." On appeal, "[j]ury instructions are read and considered as a whole in determining whether there is error." *White v. State*, 281 Ga. 276, 280 (637 SE2d 645) (2006). A court may give repetitive definitions if the court so chooses, see *Huckabee v. State*, 287 Ga. 728, 734 (699 SE2d 531) (2010), but Appellant cites no authority that requires the trial court to define a crime each and every time it appears in an indictment. Indeed, doing so could be confusing and cumbersome in cases where the same crime is charged or referenced as a predicate offense in multiple counts.

Appellant also argues that the aggravated assault instruction as given regarding the felony murder of Hernandez-Contreras was incorrect as an instruction regarding the aggravated assault of Contreras, because the trial court told the jury that an "intent to murder" was required.[7] Appellant was charged with aggravated assault against Contreras based not on an alleged intent to murder him but rather on Appellant's assault of Contreras with a deadly

---

[6] Although he did not raise a specific objection to the aggravated assault instruction, Appellant reserved all objections to the jury charges, and because this case was tried in 2004, that reservation was sufficient to preserve this issue for appeal. See *State v. Kelly*, 290 Ga. 29, 31 (718 SE2d 232) (2011) ("Effective for trials conducted on or after July 1, 2007, [OCGA § 17-8-58] changed the prior practice whereby counsel could generally reserve objections to the charge pending a motion for new trial or appeal." (citations and punctuation omitted)).

[7] The court instructed the jury:

In this case, the crime that is charged as to the felony murder is the count of aggravated assault. A person commits the offense of aggravated assault when that person assaults another person with intent to murder. To constitute such an assault, actual injury to the victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim, or intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury. The intent to murder is a material element of aggravated assault as charged in this case.

weapon — "an object, device and instrument, to wit: a motor vehicle, which, when used offensively against a person is likely to result in serious bodily injury by running into him with the vehicle." Thus, Appellant is correct that the court's statement that the jury had to find that Appellant intended to murder Contreras in order to find him guilty of aggravated assault against Contreras was erroneous.

But it was also harmless. The effect of the court's explanation of aggravated assault was to *increase* the burden on the State, requiring it to prove that Appellant acted with the intent to kill rather than only seriously injure Contreras. The jury nevertheless found that Appellant had committed aggravated assault against Contreras, and the evidence supported that verdict. Instructional errors that can only benefit a defendant are harmless. See *Redding v. State*, 293 Ga. 766 (749 SE2d 717) (2013).

*Judgment affirmed in part and reversed in part, and case remanded. All the Justices concur, except Blackwell, J., disqualified.*

DECIDED OCTOBER 7, 2013.

*Gary W. Jones*, for appellant.
*D. Victor Reynolds, District Attorney, Amelia G. Pray, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General*, for appellee.